Morris BROOKS, Frederick W. Hofer, Stanley Kent, William E. Callahan, John P. Cahill,

v.

**LOCAL NO. 30, UNITED SLATE, TILE AND COMPOSITION ROOFERS, CAMP AND WATERPROOF WORKERS' ASSOCIATION.**

Civ. A. No. 28487.

United States District Court
E. D. Pennsylvania.

Sept. 20, 1960.

John Rogers Carroll, Philadelphia, Pa., for plaintiffs.

Richard H. Markowitz, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

The above Motion was made at the conclusion of the plaintiffs' case during the final hearing [1] of the matter, pursuant to the second sentence of F.R.Civ. P. 41(b), 28 U.S.C. which provides:

> "After the plaintiff has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief."

Since the hearing judge has concluded that the Motion must be granted on this record, this Memorandum Opinion contains the findings provided for in F.R. Civ.P. 52(a).

The Complaint seeks an injunction restraining the respondent from assessing or collecting a dues increase effective as of May 1960 and from suspending, expelling or taking any other disciplinary action against the plaintiffs on the ground that such increase was not pursuant to a majority vote by secret ballot as required by § 101(a) (3) (A) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C.A. § 411(a) (3) (A).[2] The plaintiffs are members in good standing of the respondent, which is a local labor organization within the

1. Both parties stipulated that the matter was being heard on final hearing.

2. Although the prayer of the Complaint asks relief for "other persons similarly situated," there is no evidence that any persons other than the five plaintiffs object to the dues increase.

provisions of the above Act (29 U.S.C.A. § 402(j)). On September 14, 1959, the effective date of the above Act, the dues of the members of respondent were $7 per month and the dues continued at this rate until May 1960.

The minutes of the Regular Meeting of February 23, 1960, contain the following approved action concerning dues (pages 136 & 137 of P–1):

> "Motion to change system of collection of dues. Election to be held on method, change from $7.00 per month to $5.00 per month with a 10¢ per hr. being deducted and sent into Union by employers.
>
> Motion by Bro. J. Kelly.
> 2nd. C. Stroman
> Approv. & Accept."

The minutes of that meeting also contained this sentence immediately after the above quotation (page 137 of P–1):

> "A special meeting will be held and a secret ballot provided for dues change.
>
> &ast; &ast; &ast; &ast; &ast;
>
> "Motion by Bro. Tackack to have meeting April 15 [4] 1960 for secret ballot on check-off system."

Timely notices were sent out to all members of respondent, including plaintiffs, on three-cent postals of the type marked as Exhibit P–3,[3] stating that a special meeting would be held March 15, 1960,[4] at which time there would be a secret ballot vote "To reduce dues to $5.-00 per month plus 10 cents per each hour of employment. 10¢ per hour to be deducted by employer." The vote was held on March 15, 1960, on secret ballots (Exhibit P–2) containing the following printing:

> "Vote For One
>
> Yes                    No
>
> ☐                      ☐

To reduce dues to $5.00 per month plus 10¢ per each hour of employment. 10¢ per hour to be deducted by Employer."

The plaintiffs did not vote at the March 15, 1960, meeting. A majority of those voting voted "yes." The respondent was engaged in collective bargaining contract negotiations from approximately March 15 to June 16, during which period there was a strike from May 1 until approximately June 16. Early in July, the respondent adopted a dues rate, effective from May 1, 1960, of $5 per month plus 5¢ per each hour of employment, which 5¢ was to be deducted by the employer. The five plaintiffs have refused to sign the cards (Exhibit P–5) submitted to them by respondent authorizing their employers to deduct the 5¢ per hour dues, but some of them have tendered varying amount of dues, which tenders have been rejected by respondent (see Exhibits P–5 to P–9). There is no evidence of any plan to expel plaintiffs from the union if they pay the $5 per month plus 5¢ per hour from May 1, 1960, and sign the 5¢ per hour check-off card (P–5).

The most difficult problem presented by these facts is whether the ballot used is a "ballot" to increase dues within 29 U.S.C.A. § 411(a) (3) (A), since it uses the word "reduce," although the clear effect of the proposal was to increase the dues since the average number of weekly hours worked by the members was 30.

██ The purpose of the Labor-Management Reporting and Disclosure Act (29 U.S.C.A. § 401ff.) is to assure that "labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations, particularly as they affect labor-management relations." 29 U.S. C.A. § 402(a). It can well be argued that the phraseology on this ballot does

---

3. The word "Special" was inserted in place of "Regular" on P–3 (testimony of Mr. Mosteller).

4. Although the minutes of the February 23 meeting contain a motion by one member to have a "meeting April 15, 1960 for a secret ballot on the check-off system," there is no evidence that this motion was either seconded or passed.

not reflect "the highest standards of responsibility" because of the lack of clarity involved. It would have been far clearer to substitute for the first sentence at the bottom of the ballot language such as "To increase dues by a reduction of the monthly charge from $7.00 to $5.00 and add the payment of 10 cents per hour of employment." However, this is a relatively small local with a membership of less than 300 persons and there is no showing of intent to deceive or confuse in the language used. Also, there is no evidence that any member was misled by the language on the ballot. In addition, it is noted that the definition of "secret ballot" in 29 U.S.C.A. § 402(k) places the emphasis on the expression of a choice "which is cast in such a manner that the person expressing the choice cannot be identified with the choice expressed," and there is no complaint of violation of the quoted language.

█ Since none of the five plaintiffs bothered to vote or promptly protest the language on the ballot, this Motion could be decided on the ground that they were estopped to complain for the first time over a month after the vote had been implemented that the increase was not authorized due to improper wording on the ballot.

█ The other objections raised are also rejected as follows:

A. The failure to implement the vote for almost four months is not fatal in view of the negotiations and strike taking place during this period. Congress clearly did not contemplate that a vote to increase the dues could be held and the union put it in effect at any time they wanted in the future, but the delay in this case was justified by the circumstances.

B. The action of the union in increasing the dues by only 5¢ an hour, instead of 10¢, is within the spirit, if not the letter, of the Congressional language, where there is no showing of an intent or plan to have an increase different from that stated on the ballot at the time the vote was held and there was a subsequent failure to secure the wages desired in the new contract executed after the vote.[5] For the advice of respondent, the hearing judge will state that, in his opinion, no further increase in dues should be made without another vote under 29 U.S. C.A. § 411(a) (3) (A).

C. Plaintiffs' contention that the increase of 10¢ per hour was only authorized if at least a 95¢ per hour increase over a three-year period was secured in the new contract is not supported by the record. The only mention of 95¢ per hour in relation to the dues was in Mr. Cahill's and Mr. Hofer's testimony of a discussion at a meeting in late April, more than a month after the secret ballot vote.

The Motion to Strike evidence made by respondent's counsel at the conclusion of plaintiffs' evidence is denied. All exhibits offered, except P–4, have been considered as in evidence, even though some have slight relevancy.

In view of the hearing judge's decision that plaintiffs have not sustained their burden of proving a violation of 29 U.S.C.A. § 411(a) (3) (A), it is not necessary to determine whether the following language of 29 U.S.C.A. § 411(a) (4) should be applied on the basis of this record:

"Provided, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: * * *."

### Order

And now, September 20, 1960, it is ordered that this action is Dismissed with prejudice.

---

5. The union hoped to secure $1.20 per hour increase over a three-year period in the new contract, but the contract provision, as decided in June, was a 75¢ per hour increase over this period.