Eddie **WITTSTEIN** et al., Plaintiffs,

v.

**AMERICAN FEDERATION OF MUSI-CIANS OF the UNITED STATES AND CANADA, Defendant.**

Julius **SCHWARTZ** et al., Plaintiffs,

v.

**ASSOCIATED MUSICIANS OF GREAT-ER NEW YORK, LOCAL 802,** American Federation of Musicians of the United States and Canada, **Defendants.**

United States District Court
S. D. New York.

Oct. 28, 1963.

Godfrey P. Schmidt, New York City, for plaintiffs.

McGoldrick, Dannett, Horowitz & Golub, New York City, for defendant American Federation of Musicians of U. S. and Canada, Emanuel Dannett, Herbert D. Schwartzman, Eugene Mittelman, New York City, of counsel.

Ashe & Rifkin, New York City, for defendant Associated Musicians of Greater New York, Local 802, David I. Ashe, New York City, of counsel.

LEVET, District Judge.

These consolidated actions are brought by members of the defendant unions challenging certain recent fiscal enactments of both the parent Federation and its Local 802. The complaint in Wittstein challenges the procedure at the Federation's recent annual convention by which a resolution was enacted, purporting to abolish the so-called 10% traveling surcharge tax and substituting therefor an increase in the per capita dues of members of the Federation. The complaint in Schwartz is framed in two counts, the second of which is substantially identical to the cause of action asserted in the Wittstein complaint. This opinion is expressly directed to govern the disposition of the Wittstein complaint and the second count of the Schwartz complaint. The first count in Schwartz challenges a provision of Local 802's By-Laws which, for the present purposes, is sufficiently unrelated to the cause asserted in the Wittstein complaint to be the subject of a separate opinion.

The complaints challenge the procedure by which the resolution was adopted as violative of both the Labor-Management Reporting and Disclosure Act of 1959, 73 Stat. 522, 29 U.S.C. § 401 et seq., and the defendant Federation's own Constitution and By-Laws. A declaratory judgment is sought seeking to enjoin the defendant Federation from carrying into effect the resolution on its effective date of January 1, 1964. The Federation has moved for summary judgment.

In order to place the action of the convention in its proper reference, it is necessary to briefly review the legal history of the Federation's 10% traveling surcharge. Article 15 of the Federation's By-Laws requires that Federation members who perform a "miscellaneous out-of-town engagement" be paid, but not to actually receive, an amount equal to 10% of the minimum wage established by the local in whose jurisdiction the engagement takes place. This additional amount is known as the "traveling surcharge." The orchestra leader does not actually turn over the additional 10% to his musicians (sidemen) because Federation By-Laws provide that the local in whose jurisdiction such engagement is performed must collect the traveling surcharge from the orchestra leader and transmit the amount to the Federation. Should the Local fail to collect the surcharge from the leader, the leader is required to transmit the surcharge directly to the Federation. In a prior action brought by the plaintiff Cutler, the collection of the 10% traveling surcharge from Cutler, when engaged as an employer in the single engagement field, was held to be violative of Section 302 of the Taft-Hartley Act, 29 U.S.C. § 186. Cutler v. American Fed. of Musicians, 211 F.Supp. 433 (S.D.N.Y.1962), aff'd 316 F.2d 546 (2 Cir. 1963), petition for certiorari filed, 32 U.S.L. Week 3103 (U.S. Sept. 16, 1963) (No. 473). At the convention, the officers of the Federation sought to abolish the 10% traveling surcharge and substitute therefor an increase in the per capita dues of its 282,000 members.

### STATUTES INVOLVED

The pertinent portion of the Act involved is as follows:

"SUBCHAPTER II. — BILL OF RIGHTS OF MEMBERS OF LABOR ORGANIZATIONS

"§ 411. Bill of rights; constitution and bylaws of labor organizations
" *  *  *

"(3) Dues, initiation fees, and assessments.—Except in the case of a federation of national or international labor organizations, the rates of

dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—

"  *  *  *

"(E) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: *Provided,* That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization."

The defendant Federation is conceded to be a labor organization in an industry affecting commerce as defined in 29 U.S.C. § 402(i) and is a labor organization other than a local labor organization or a federation of national or international labor organizations within the meaning of 29 U.S.C. § 411(a) (3) (B). See Cutler v. American Fed. of Musicians, supra.

The relevant article of Federation's Constitution is Article 5 and of the Federation's By-Laws, Article 28. Article 5 is as follows:

"ARTICLE 5 — REPRESENTATION AND DELEGATES

"All Locals of this Federation of one hundred and fifty members or less shall be entitled to one delegate. All Locals shall be entitled to one delegate for each one hundred members or a major fraction thereof, not exceeding three delegates for any one Local, but each Local shall be entitled to one vote for each one hundred or major fraction thereof, but no Local shall cast more than ten votes, and the number each Local is entitled to shall be computed from the last report made on January 1st before the convention by the Local, according to the books of the Treasurer. On questions affecting a change in the laws, each Local may, upon roll call, cast as many votes as it has members, as per book of the Treasurer, A. F. of M. All laws so passed shall be referred to a convention committee consisting of the Executive Board, A. F. of M., and chairmen of all committees, who may sanction or veto same, their action to be final. Roll call shall be demandable and had under this Article on demand of ten delegates or five Locals."

Article 28 of Federation's By-Laws in the pertinent parts are as follows:

"ARTICLE 28 — CONVENTION PROCEEDINGS — THE ORDER OF BUSINESS SHALL BE:

"Section 1. Appointment of Credentials Committee by the President.

Report of Committee on Credentials.

Standing introduction of Delegates attending Convention for the first time.

Appointment of other committees.

Reading of rough minutes of previous session.

Report of officers.

Communications and bills.

Reports of committees.

Unfinished business.

New business.

Nomination and election of officers.

Installation of officers.

Reading of rough minutes.

Adjournment.

"Section 2. For Rules of Order, Robert's Revised Manual shall be the guide unless otherwise provided and the manner of voting shall be viva voce, unless otherwise ordered. The vote at elections or the vote on roll call shall be in accordance with Article V of the Constitution.

"Section 3. The recommendations made in the official report of the President, Secretary or Treasurer relative to any new law or to any advisable changes in existing laws shall be immediately referred to the Law Committee and shall not thereafter be considered in connection with the report of such officer.

"Section 4. Delegates or Locals desiring to introduce in the Convention any resolution or measure must forward same written and in duplicate to the International Secretary, not later than fifteen (15) days before the day set for the first session of the Convention.

"A. All such resolutions or measures shall be printed and distributed to the delegates at said first session.

"B. In addition, delegates may introduce resolutions until thirty (30) minutes after the closing morning session of the second day of the Convention by presenting same to the Chairman.

"C. All resolutions or measures shall be numbered consecutively and printed in compact pamphlet form.

"Section 5. At the annual Convention the President shall appoint the following committees: Finance, Measures and Benefits, Good and Welfare, Organization and Legislation, International Musician, President's Report, Secretary's Report, Location and such other committees as the Convention may direct. As soon as practicable after receiving the list of delegates, the President shall appoint from that list the Credentials Committee and the Law Committee, and from the members of said Law Committee a subcommittee of five to be known as the Appeals Committee.

"Section 6. * * *

"Section 7. The Committee on Credentials shall examine and report on the credentials of delegates. The chairman of the committee shall take charge of all documents appertaining to the duties of said committee, investigate and report upon the credentials of the delegates immediately after appointment, and the report of said committee shall be disposed of before any other business is transacted.

"A. When the Secretary receives credentials from the locals he shall, when acknowledging receipt of the same to the individual delegates, enclose a sticker which the delegate may attach to his luggage on which is inscribed words encouraging the use of live music.

"Section 8. The Committee on Finance shall annually inspect and investigate the financial affairs of the American Federation of Musicians and accounts of the Secretary and Treasurer of the Federation, as well as the books and accounts of all who may be entrusted with the receipt or expenditure of Federation funds, and shall make a full report in writing of its findings to the Convention of the Federation at which it was appointed.

"Section 9. All other committees created by the Convention shall perform such duties as indicated by their title, and all resolutions introduced shall be referred by the President to the Committee he deems ap-

propriate to receive and act upon such resolution.

"Section 10. Printed copies of the annual reports of the President, Secretary, Treasurer, Auditor and any resolutions to be submitted to the Convention by the International Executive Board, if possible, shall be mailed to the accredited delegates to the Convention of the Federation not earlier than three weeks and not later than two weeks preceding the opening session of the Convention.

" *   *   *

"Section 21. No alterations or amendments to the Constitution or By-Laws (except it is otherwise provided in the By-Laws or ordered by a Convention) shall be made unless proposed in writing, and said alterations or amendments must receive a majority vote of the delegates present to become a law, unless otherwise provided.

"Section 22. All amendments and additions to the laws passed by the Federation shall go into effect the fifteenth day of September succeeding the Convention which enacts them. Exempt therefrom are amendments and additions for the enforcement of which the Convention has designated another date than the fifteenth day of September."

As appears in 29 U.S.C. § 411(a) (3), "the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—* * *" as provided by said Section 411(a) (3). These methods governing in the case of a labor organization such as defendant Federation are specifically set forth as follows:

" *   *   * (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and bylaws of such labor organization: Provided, That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization."

## THE CONVENTION'S VOTE

There are no genuine issues as to any material facts concerning the following: At an evening session of the convention commencing at 8:15 P.M. on June 12, 1963, the Joint Committee on Law and Finance submitted its report through Chairman Davis (Law) and Chairman Chanson (Finance) recommending passage of Recommendation No. 11 which inter alia abolished the 10% traveling surcharge and substituted therefor an increase in the per capita dues of Federation members. After some discussion and the transaction of other business, Recommendation No. 11 was called for vote. Two voice votes were had, after each of which the Chair was unable to determine whether the "ayes" or "nayes" predominated, stating: "The ayes and nayes appear to be of equal response." No further attempt was made to ascertain how the delegates voted either by a show of hands or by standing. Thereafter, Delegate Snider, alleging to be speaking in behalf of five locals, demanded a roll call vote in accordance with Article 5 of the Federation's Constitution, which provides:

"On questions affecting a change in the laws, each Local may, upon roll call, cast as many votes as it has members as per book of the Treas-

urer, A. F. of M. * * * Roll call shall be demandable and had under this Article on demand of ten delegates or five Locals."

The Chair then stated: " * * * The roll call vote has been asked for. It's mandatory under the law. * * * " Delegate Tomei then inquired what procedure was to be followed if "the delegates of the local are divided on the question." The Chair responded:

"I'm advised, Brother Tomei, that on a split vote each would vote the number of the divisional. You understand, delegates, when you vote in a roll call vote you vote the total membership of your local. You have to divide up the membership of your local". (Scola aff. Oct. 9, 1963, Ex. A, p. 4)

In response to a request to explain what a roll call vote is, the Chair answered:

"A roll call vote, ladies and gentlemen, is a vote of the total membership of a local. For example, the first local would be Number 1. Local number—the local One representative would rise to the microphone and say, 'Cincinnati votes as follows.' That would be recorded here. We go through the entire list of locals. That's the only way we can do it and we are required to do it under the law." (ibid.)

Again, prior to the vote, the Chair explained:

" * * * If a Local has a thousand members and if one person speaks for that local, having assured this delegation that this (unintelligible words)—he stands up and votes. He names that (unintelligible word) local and the number." (Scola aff., id., p. 7)

Later, Secretary Ballard stated:

" * * * The roll call vote allows the local to vote the membership of the entire local—the membership on which they pay per capita (unintelligible words). That means that Local Number 1 will vote 1,115 votes and so on down through the entire list." (Scola aff., id., p. 9)

The roll call vote was taken, which resulted in 158,068⅔ votes being cast in favor of Resolution No. 11, and 113,742⅓ votes in opposition. The Chair announced the vote and the session was adjourned at 2:30 A.M.

There are at least 12,381 members of the Federation who are members of more than one Local. They are classified as follows:

| Individual Members | Number of Different Locals to Which Members Belong | Duplicate Membership Voting Strength |
|---|---|---|
| 11,145 | 2 | 22,290 |
| 1,074 | 3 | 3,222 |
| 152 | 4 | 608 |
| 6 | 5 | 30 |
| 4 | 6 | 24 |
| TOTALS 12,381 | | 26,174 |

The defendant relies solely on the computed recorded vote as allocated to the respective Locals on a membership basis and on nothing else. (SM 119, Oct. 1, 1963)

THE ISSUE

The issue, therefore, is whether or not the procedure in acting on this resolution increasing the dues complied with Section 101(a) (3) (B) (i) of the Act,

29 U.S.C. § 411(a) (3) (B) (i). There is, of course, no contention that a referendum was taken, subsection (a) (3) (B) (ii), nor is there any contention that the majority vote of the members of the Executive Committee was taken pursuant to express authority to increase dues contained in the Constitution and By-Laws of such labor organization, subsection (a) (3) (B) (iii). The defendant contends that the vote as above mentioned and as set forth on pages 56–58 of the Official Proceedings complies with the statute (i. e., a passage "by a majority of the delegates voting at a regular convention"); the plaintiffs allege that it does not.

## NON-COMPLIANCE WITH THE ACT

### *Purposes of the Act*

One of the purposes of the Labor-Management Reporting and Disclosure Act of 1959 and particularly the so-called "Bill of Rights" (29 U.S.C. §§ 411–415) was "to insure union democracy." (Senate Report No. 187, 1959, U.S.Code Cong. & Ad.News, p. 2318) In the House Report No. 741 one of the purposes stated was to "Require democratic procedures and safeguards within unions, designed to protect basic rights of union members." (1959 U.S.Code Cong. & Ad. News, p. 2424) The Senate Report pointed out that effective measures to guarantee internal union democracy cannot be applied to all unions without the coercive powers of government (p. 2322); that "[t]he financial conduct of labor unions and their officers is a proper concern of the Federal Government" and that the rules governing the conduct of the union's business such as dues and assessments payable by the members should be known to all members. (p. 2324). It is obvious that the "intended beneficiary of the Labor-Management Reporting and Disclosure Act of 1959 is the union member." (O'Donoghue, The Bill of Rights—Responsibilities of Its Beneficiaries, 48 Geo.L.J. 257 (1959))

Speaking of the above-mentioned House Committee Report No. 741, Freeman, District Judge, in Horn v. Amalgamated Ass'n of Street Employees, 194 F.Supp. 560, 561 (E.D.Mich.1961) wrote:

"This House Committee Report clearly shows that the reporting committee was concerned about instances of lack of 'internal union democracy' and proposed that effective measures for the protection of 'basic rights' could be applied only through powers of the Government. It is evident that the Bill of Rights of the Labor-Management Reporting and Disclosure Act of 1959 was the response of Congress to this concern in which the basic rights to be protected are *specifically* set out. \* \* \*"

In an opinion concerning a resolution of a local union to increase dues, Van Dusen, D. J., wrote:

"The purpose of the Labor-Management Reporting and Disclosure Act (29 U.S.C.A. § 401ff.) is to assure that 'labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations, particularly as they affect labor-management relations.' 29 U.S.C.A. § 402(a). \* \* \*" Brooks v. Local 30, United Slate Workers, 187 F.Supp. 365, 367 (E.D. Pa.1960).

In Nelson v. Johnson, 212 F.Supp. 233, 248 (D.Minn.1962), particularly involving the fiduciary duties of union officials, Larson, District Judge, in commenting on the purposes of the Act, among other things said:

"\* \* \* There can, in short, be little doubt that Congress meant to lay its hands upon irregular internal affairs. See e. g., 105 Cong.Rec. 5489 (daily ed. April 16, 1959) (remarks of Senator Ervin); 45 Va.L. Rev. 203–206 (1959) (remarks of Senator Kennedy); see generally Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819 (1960). \* \* \*"

The Congressional declaration of findings, purposes and policy contained in Title 29 U.S.C. § 401 indicates the intent of Congress to require labor organizations and their officials to adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organization. To assist in the effectuation of this purpose, Congress was not content to pronounce general platitudes but, instead, at least as to increased dues, provided explicit and exclusive methods by which such increases might be authorized. Defendant Federation claims that it produced an equivalent or even a superior or more democratic method, but that, even if true, is not determinative of the validity of the process observed.

In like fashion counsel may well argue that a national direct primary of all party voters might be a more democratic method of selecting a Presidential nominee than the convention method and that a direct poll of all voters would be a more democratic method of Presidential election than the present electoral college system. However, it is not the prescribed method and I believe that there is no doctrine of "equivalents" applicable here. As far as democracy is concerned, the second method, that is, membership referendum by secret ballot, is obviously more democratic than the process actually used.

Although proponents of the bill and others recognized the desirability of minimum interference by government in the internal affairs of the union, the fact is that a number of the provisions of the "Bill of Rights" are "express statutory restrictions and requirements which supersede and invalidate all existing contrary provisions in union-governing laws and must be applied to the form prescribed by the law whether or not a majority of the union membership so desires." Hickey, The Bill of Rights of Union Members, 48 Geo.L.J. 226 (1959). As Mr. Hickey points out, "[b]oth the Senate and the House furthered the intrusion of internal union affairs by incorporating the bill-of-rights provision"

(id. at 230) and the third method of increasing dues (Title 29 U.S.C. § 411(a) (3) (B) (iii)) was inserted by way of amendment to eliminate the necessity of the other more expensive requirements of special conventions and national referenda. (id. at 242)

Title 29 U.S.C. § 411(b) provides: "Any provision of the constitution and by laws of any labor organization which is inconsistent with the provisions of this section shall be of no force or effect." "When one becomes a union member, he agrees to be governed by the union constitution, by-laws, and rules, *not inconsistent with rights and procedures established by the Act*." (Emphasis inserted) Cleveland Orchestra Comm. v. Cleveland Fed. of Musicians, 303 F.2d 229, 230 (6 Cir. 1962)

The pertinent provision of the Act requiring "a majority vote of the delegates voting at a regular convention" is clearly mandatory. The Act definitely limits the manner of action by stating that the rate of dues and initiation fees, etc. shall not be increased *except* by the methods specified.

As enunciated by La Buy, District Judge:

"\* \* \* A statute which directs performance of a certain thing in a particular manner, bears the implication that the action taken shall not be carried out otherwise than as directed nor by a different person. As was said in Botany Worsted Mills v. United States, 278 U.S. 282, 289, 49 S.Ct. 129, 132, 73 L.Ed. 379: 'When a statute limits a thing to be done in a particular mode, it includes the negative of any other mode. Raleigh, etc., R. R. Co. v. Reid, 13 Wall. 269, 270 [80 U.S. 269], 20 L.Ed. 570; Scott v. Ford, 52 Or. 288, 296, 97 P. 99.'" Toledo, P. & W. R. R. v. Stover, 60 F.Supp. 587, 593 (S.D.Ill.1945).

In construing the Act, the court should first look to a plain-meaning of words as they have been actually enacted by Congress. Hughes v. Local 11,

International Ass'n of Bridge Workers, 287 F.2d 810, 818 (3 Cir.), cert. denied 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32 (1961).

Ranes v. Office Employees Union, 317 F.2d 915 (7 Cir. 1963) has no bearing on the issue here. It held merely that a valid passage by a international union of a resolution increasing the dues of all members (i. e., including those of all Local members) did not require action by the Local union under Section 101(a) (3) (A) of the Act, 29 U.S.C.A. § 411 (a) (3) (A).

It is my conclusion that the convention failed to comply with the mandatory provisions of Title 29 U.S.C. § 411 (a) (3) (B) (i) and that as a result I am forced to declare the action taken increasing dues to be void. Consequently, there is no necessity of determining the alleged violations of the Constitution or By-Laws of the Federation. It is thus evident that the motion of defendants for summary judgment must be denied.

Although the plaintiffs made no cross-motion for summary judgment, the court has authority to grant summary judgment for plaintiffs. Local 33, Int. Hod Carriers Bldg. and Common Laborers' Union of America v. Mason Tenders Council, 291 F.2d 496 (2 Cir. 1961); Bell v. Waterfront Commission of New York, 183 F.Supp. 175 (S.D.N.Y.1960), aff'd 279 F.2d 853 (2 Cir. 1960); Dickhoff v. Shaughnessy, 142 F.Supp. 535 (S.D.N.Y.1956); Hennessey v. Federal Security Administrator, 88 F.Supp. 664 (D.Conn.1949); 6 Moore, Federal Practice ¶ 56.12 (2 ed. 1953).

Consequently, summary judgment for plaintiffs is granted to the following extent:

(1) A declaratory judgment declaring that that portion of Recommendation No. 11 increasing the per capita dues of Federation members was invalidly enacted under 29 U.S.C. § 411(a) (3) (B) (i);

(2) The defendants Federation and Local 802 are permanently enjoined from carrying into effect the provisions of Recommendation No. 11 increasing the per capita dues of Federation members.

The first count in Schwartz challenges a provision of Local 802's By-Laws which, for the present purposes, as heretofore stated, is sufficiently unrelated to the cause asserted in the complaint herein to permit the entry of final judgment with respect to the Wittstein action and the second count in the Schwartz action. Accordingly, I expressly direct the entry of a final decree and judgment with respect to Wittstein complaint and the second cause of action in Schwartz. There is no just reason for delay. All the facts pertinent to the decision on the Federation's actions have been adduced. There is, accordingly, no just reason why final judgment should not be entered. See Fed.R.Civ.P. 54(b); Backus Plywood Corp. v. Commercial Decal, Inc., 317 F.2d 339 (2 Cir. 1963), cert. denied, 375 U.S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (Oct. 22, 1963).

Settle order and judgment with costs against the Federation within ten (10) days from the date hereof on two (2) days notice.