Julius SCHWARTZ, Buddy Kane, Robert Curtis, John C. Rosenmerkel, William Arnold, Frances Baron, Leonard O. Gaskin, Louis V. Schwartz, Herbert Wasserman, Judith Bregman, Solomon Kosarin and Glen Williams, Plaintiffs,

v.

ASSOCIATED MUSICIANS OF GREATER NEW YORK, LOCAL 802, American Federation of Musicians of the United States and Canada, Defendants.

Eddie WITTSTEIN, Ben Cutler, Julius Schwartz, Marty Levitt, Claude Garreau, Bert Fisher, George Auld, Leo Greco, Hector De Rienzo, Milton Farowitz and Matt Gillespie, Plaintiffs,

v.

AMERICAN FEDERATION OF MUSICIANS OF the UNITED STATES AND CANADA, Defendant.

United States District Court
S. D. New York.
Oct. 29, 1963.

Godfrey P. Schmidt, New York City, for plaintiffs.

McGoldrick, Dannett, Horowitz & Golub, New York City, for defendant American Federation of Musicians of the United States and Canada. Emanuel Dannett, Herbert D. Schwartzman, Eugene Mittelman, New York City, of counsel.

Ashe & Rifkin, New York City, for defendant Associated Musicians of Greater New York, Local 802. David I. Ashe, New York City, of counsel.

LEVET, District Judge.

These consolidated actions are brought by members of the defendant unions challenging certain recent fiscal enactments of both the parent Federation and its Local 802. The complaint in Wittstein as well as the second count in the Schwartz complaint challenge the procedure at the Federation's recent annual convention by which a resolution was enacted purporting to abolish the so-called 10% traveling surcharge and substituting therefor an increase in the per capita dues of members of the Federation. Both the complaint in Wittstein and the second count of the Schwartz complaint have already been dealt with in an opinion filed October 28, 1963, 223 F.Supp. 27. This opinion is directed solely to the first count in the Schwartz complaint.

The first count of the Schwartz complaint asserts that certain standing resolutions and By-Laws of Local 802 concerning a 1½% work tax and the methods of its administration are violative of Section 302 of the Labor Management Relations Act of 1947, 29 U.S.C. § 186; Title I of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401 et seq. and the defendant Local's own Constitution and By-Laws. The plaintiffs seek:

"(a) A declaratory judgment declaring illegal, void and of no effect defendant's new and unlawful requirements and rules concerning the aforesaid purported authorization form ('Exhibit A' hereto annexed) and the aforesaid system of making collection directly from sidemen of the said 'Local Tax' by use of that form;

"(b) A declaratory judgment declaring illegal, void and of no effect defendant's new and unlawful requirements and rules concerning the form hereto annexed as 'Exhibit B' and the aforesaid system of making collection of said 'Local Tax' directly from sidemen by use of that form;

"(c) A preliminary injunction forbidding defendant, its officers, agents and employees from taking any steps to visit reprisals by way of expulsion, fine, penalty or otherwise, upon any sidemen who refuse to execute either of the aforesaid forms, Exhibits A and B, annexed to this complaint; or who refuse to pay said local taxes directly to defendant unless and until defendant's By-Laws are duly changed to require such direct payments;

"(d) A permanent injunction forbidding defendant, his officers, agents and employees from putting into effect or attempting to enforce in any way without valid amendment of defendant's By-laws, any system of collecting the aforesaid 'local taxes' directly from sidemen or leaders;

\* \* \*

"(g) A preliminary injunction forbidding defendant, its officers, agents and employees from taking steps to coerce execution of deduction authorizations by plaintiffs and other sidemen by means of threats of union penalties or reprisals.

\* \* \* "

(See Prayer for Relief in Complaint) The defendants have moved for summary judgment and there are no genuine issues as to any of the material facts pertinent to a decision.

The Local tax has a long and tortuous history beginning with its genesis on September 13, 1943, when at the annual By-Laws meeting of Local 802 the following resolution was adopted:

"RESOLVED, That effective as of October 1, 1943:

"(a) There shall be payable by and collected from all members a 1 per cent tax on all engagements based on scale price therefor;

"(b) Said 1 per cent tax shall likewise be levied on all salaries paid to officers of our Local and to all

members thereof regularly employed by the Union;

"(c) All income realized from items (a) and (b) above mentioned shall be allocated to the General Fund of our Local." (Arons Sept. 23 Aff. p. 10, Ex. 10)

The 1943 resolution was superseded by a standing resolution adopted September 9, 1955, which provided:

"THEREFORE BE IT RE-SOLVED that in order to conserve and promote the welfare of Local 802 and its members

"(a) There shall be payable by and collected from all members an additional 1 per cent tax on all engagements based on scale price therefor;

"(b) Said additional 1 per cent tax shall likewise be levied on all salaries paid to officers and to all Local 802 members thereof regularly employed by the Union;

"(c) All incomes realized from items (a) and (b) above-mentioned shall be allocated as follows:

"1.  ¼ (one-fourth) of 1 per cent to be set aside for the purpose of continuing the campaign for live music.

"2.  ¼ (one-fourth) of 1 per cent to be set aside for a strike fund.

"3.  ½ (one-half) of 1 per cent to be allocated to the General Fund of our local to take care of the rising costs of administering the affairs of Local 802.

(Arons Sept. 23 Aff. p. 11, Ex. 11)

On September 26, 1960, the Local tax was again the subject of a standing resolution which, effective January 1, 1961, reduced the tax to 1½% and which provided: "The leader shall be held responsible for the collection and payment of this tax." (Arons Sept. 23 Aff. p. 12, Ex. 12) The standing resolution was incorporated into the By-Laws in the following language:

"Effective as of January 1, 1961: The 2% Tax payable on all engage-

ments be reduced ½ of 1%. Therefore, on all engagements there is payable a total of 1½% tax to the General Fund. *The leader shall be held responsible for the collection and payment of this tax.*

"There be no further specific allocation of ¼ of 1% to the Live Music Fund and no further specific allocation of ¼ of 1% to the Strike Fund.

"(a) There shall be payable by and collected from all members a 1½ per cent tax on all engagements based on scale price, therefore: *Leaders shall be held responsible for the collection and payment of this Tax.*

"(b) Said 1½ per cent tax shall likewise be levied on all salaries paid to officers of our local.

"(c) All income realized from items (a) and (b) above-mentioned shall be allocated to the General Fund of our local."

(Emphasis supplied) (Arons Sept. 23 Aff. Ex. 1, pp. 66–67)

On December 1, 1961, a preliminary injunction order was signed in an action captioned Carroll v. American Federation of Musicians of United States, see 295 F.2d 484 (2 Cir. 1961), prohibiting the defendants "from demanding or accepting" the Local tax from a class of orchestra leaders and contained the provision:

" *  *  * this injunction order shall not be construed as forbidding any orchestra leaders, including any plaintiff, from paying directly to defendant Local 802 the aforesaid one and one-half (1½%) per cent 'tax' to the extent that such orchestra leader is furnished with written authorization complying with section 302(c) of the Labor Management Relations Act of 1947, as amended; and it is further  *  *  *."

On December 12, 1961, Local 802's Executive Board passed a resolution, "effective immediately," which provided:

"On all single engagements such as weddings, college and high school

dances, business conventions, club entertainments and the like the leader shall submit in writing, within three days after the engagement, the following:

"1. Date, place and time of said engagement.

"2. Names and card numbers of all sidemen who have performed said engagement.

"Any Leader who fails to comply with this order will be subject to charges"

(Arons Sept. 23 Aff. pp. 2–3, Ex. 2)

Notice of the terms of the resolution of the Executive Board was published in the December 1961 issue of ALLEGRO, the official monthly publication of Local 802. (Arons Sept. 23 Aff. p. 3, Ex. 3) The notice provided in pertinent part:

"Because of the restriction on the existing methods of tax collection imposed on Local 802 in the injunction obtained by the Orchestra Leaders of Greater New York, the Union, pending final disposition of the case, is now obliged to collect taxes directly from the sideman on single engagements, in accordance with a Standing Resolution of the By-Laws, revised as of January 1, 1961, * * *."

After the dismissal of the Carroll actions, see Carroll v. American Fed. of Musicians, 206 F.Supp. 462 (S.D.N.Y. 1962), aff'd 316 F.2d 574 (2 Cir. 1963), a companion action was begun by the plaintiff Cutler (62 Civil 2552) again challenging, inter alia, the Local's tax. On October 16, 1962, a preliminary injunction order was signed in the Cutler case, providing:

"(3) This injunction order shall not be construed as forbidding any plaintiff from paying directly to defendant Local 802 the aforesaid one and one-half (1½%) per cent 'tax' to the extent that such orchestra leader is furnished with written authorization complying with Section 302(c) of the Labor-Management Relations Act of 1947, as amended."

See Cutler v. American Fed. of Musicians, 211 F.Supp. 433 (S.D.N.Y.1962), aff'd 316 F.2d 546 (2 Cir.1963), petition for certiorari filed, 375 U.S. 941, 84 S.Ct. 346, 11 L.Ed.2d 272 (1963).

In August 1963, Local 802 issued an "Official Statement By the Executive Board" which was sent to all its members and printed in the August 1962 issue of ALLEGRO. The statement read in part:

"The obligation to pay the 1½% tax is imposed by our By-Laws upon each and every member of the Local. * * * *"

"The obligation of the leaders is only a means designated to hold help the Union collect the tax from all members. Since this provision was inserted only for the benefit of the Union, the Union can waive it and insist that the members themselves, who are primarily responsible for the payment of the tax, should pay it directly." (Arons Sept. 23 Aff. p. 4, Ex. 4)

For the period from December, 1961 to December, 1962, Local 802 sent bills for the Local tax to those sidemen whose names had been reported by leaders pursuant to the resolution of the Executive Board. The January through May, 1963 monthly issues of ALLEGRO contained the notice that the sidemen who have received a bill for the Local tax compute it and forward the amount to the Local. (Arons Sept. 23 Aff. Ex. 5)

In January 1963, after having sent similar notices to sidemen and leaders, the following notices were published in ALLEGRO:

"NOTICE TO SIDEMEN

"You received a bill for tax due 1961–1962 for some single engagements (club jobs).

"Your name and card number were submitted to the Union by the leader on these engagements, who did NOT collect the tax for them.

"Please compute and pay the 1½ per cent tax due as quickly as possible.

"EXECUTIVE BOARD
"Local 802, A.F.M."

"NOTICE TO LEADERS

"Bills have been sent, and are being sent, to leaders for the payment of the 1½ per cent tax on single engagements (club jobs). The bills are accompanied by substantially the letter reproduced on this page.

"EXECUTIVE BOARD
"Local 802, A.F.M."

(Arons Sept. 23 Aff. Ex. 5)

Since January 1963, Local 802 has distributed a dues authorization form, which reads as follows:

"Date ———

"I ——————— (sideman) hereby authorize ——————— (leader) to deduct 1½% of Union Scale from my wages on all single engagements on which I perform under his leadership, and to pay over said 1½% of my wages to Local 802, A.F. of M. as dues on my behalf as required by the By-Laws of Local 802, A.F. of M.

"This authorization shall continue until revoked by me.

"Signature ——— Card No.———
"Address ———————————"

The authorization forms were expressly limited to the single engagement field.

On September 9, 1963 at the Annual By-Laws Meeting of the membership of Local 802, the membership passed the following resolution, effective January 1, 1964, which was to be codified by the Executive Board into the By-Laws:

"RESOLUTION NO. 3

"BE IT RESOLVED, that all Standing Resolutions concerning the local tax on engagements (the 1½% tax) be rescinded, and such work taxes be abolished; and

"BE IT FURTHER RESOLVED, that the regular membership dues of Local 802 shall be $80.00 per annum, payable quarterly as at present, for all members except Honorary and Life members, this amount to include the AFM per capita tax; * * *." (Arons Sept. 23 Aff. pp. 5–6, Ex. 8)

The following Thursday, September 12, 1963, the Executive Board attempted to solve the interim situation pertaining to the period between September and December 31, 1963 by a resolution which incorporated the standing resolutions (with respect to the Local tax) into Section 7 of Article II of the By-Laws and to amend those standing resolutions as follows:

"Section 7(a). In addition to any other dues provided for in these By-Laws required to be paid pursuant to the By-Laws of the A.F. of M., there shall be paid by all members who work on musical engagements work dues in the amount of 1½ per cent of the minimum wage scales earned by such members on all such musical engagements.

"(b) The said work dues of 1½ per cent shall also be paid by all officers of the Local, based on their salaries.

"(c) On all steady engagements or engagements under a collective bargaining agreement, the Leader or Personnel Manager, shall deduct such work dues from the salaries of the sidemen working on the engagements and transmit the dues so deducted to the Local together with the name and number of each sideman and the amount deducted from his salary. On all other engagements, if the Leader or Personnel Manager does not deduct such work dues from the salaries of the sidemen for transmittal to the Local, then he shall submit to the Local the names and card numbers of the sidemen working on the engagements. The failure or refusal of a Leader or Personnel Manager to carry out the requirements of this paragraph shall be a violation of these By-Laws for which he may

be brought on charges and disciplined." (Arons Sept. 23 Aff., Ex. 8)

## DISCUSSION

Plaintiffs, in the first count of the Schwartz complaint challenge certain By-Laws and standing resolutions of Local 802 relating to the 1½% Local tax and the methods used by Local 802 in administering these provisions. The major thrust of the complaint is that the direct collection of the tax from the members is violative of Section 302 of the Labor Management Relations Act of 1947, 29 U.S.C. § 186, Section 101 of the Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411, and the defendant Local's own Constitution and By-Laws.

All of the challenges center about whether the Local taxes are membership dues and thus an obligation of the sidemen or whether they are solely the obligation of the leader. As the chronology of the tax shows, from October, 1943 to October, 1955 the resolutions made it clear that the tax was "to be payable by and collected from all members." The standing resolution which became effective January 1, 1961 repeated the language that the Local tax was "payable by and collected from all members," but went on to provide that the "[l]eaders shall be held responsible for the collection and payment of this Tax." Although the wording in the light of present events is perhaps somewhat inartistic, it would appear that the Local tax is, and has been since October, 1943, an obligation of the membership. The Local, for reasons best known to itself, chose in 1961 to make the orchestra leader its agent for collection. Yet, the obligation, while perhaps initially the leader's for ease of collection, remained ultimately that of the sideman.

## I.

Section 302 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 186, provides in pertinent part that it shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting commerce except:

"(c) The provisions of this section shall not be applicable * * * (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: *Provided,* That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner; * * *."

The plaintiffs urge that the Local tax is not embraced within the statutory term "membership dues" and, therefore, falls without the statutory check-off provision. As the chronology of the tax shows, the obligation to pay the tax is ultimately that of the members. The challenge under Section 302 then narrows itself to determining whether a percentage levy in the form of a work tax is within the statutory phrase "membership dues."

There appears to be no direct precedent construing the phrase "membership dues" in Section 302 of the Taft-Hartley Act, as amended, 29 U.S.C. § 186. The closest court decision is N. L. R. B. v. Food Fair Stores, Inc., 307 F.2d 3 (3 Cir. 1962), where the court discussed Section 302 only by way of dicta in attempting to construe the phrase "periodic dues" in Section 8(a) (3), 28 U.S.C. § 158(a) (3). The court simply stated that Section 302 had been construed by the Department of Justice to include "assessments" and this interpretation was acquiesced in by the National Labor Relations Board. William Wolf Bakery, Inc., 122 N.L.R.B. 630 (1958). Cf. International Harvester Co., 95 N.L.R.B. 730, 733 (1951). The construction by the Department of Justice was in a memorandum of an Assistant Attorney General, dated May 13, 1948, in response to a request from the Solicitor of the Department of Labor. The memorandum read in pertinent part:

"Does the term 'membership dues' in Section 302(c) of the Act include initiation fees and assessments as well as regular periodic dues, particularly where the union constitution provides that such fees and assessments are included in the term 'membership dues' ?

"This identical question was presented to the Criminal Division as the result of the National Bituminous Coal Wage Agreement of 1947 which contained a provision for the check-off of membership dues, including initiation fees and assessments of the United Mine Workers of America and its various subdivisions, as authorized and approved by the International Union, UMWA. In a memorandum, dated July 10, 1947, we furnished the Attorney General with our views on this question, stating that initiation fees and assessments, being incidents of membership, should be considered as falling within the classification of 'membership dues.' We are still of this view." 22 LRRM 46, 47 (1948).

This court is reluctant to read the statute other than it has been read by two administrative agencies, to one of whom is committed the enforcement of the penal provisions of Section 302 and the other of whom Congress has seen fit to commit the day-to-day operations of this nation's labor relations. The fact that the tax in issue here is a percentage levy rather than a fixed amount does not alter the conclusion that the tax is within the statutory phrase "membership dues." Cf. Local 409, International Alliance of Theatrical Employees, 140 N.L.R.B. No. 74 (1963), where a percentage levy was held to be "periodic dues" within the meaning of Section 8(b) (2) of the National Labor Relations Act, 29 U.S.C. § 158(b) (2).

In sum, I must agree with Judge Friendly when he wrote in Carroll v. American Fed. of Musicians, 295 F.2d 484, 487 (2 Cir. 1961):

"From what we have before us it would seem indeed that the 'tax' imposed by the Local's by-law may have constituted the payment of membership dues although not denominated as such * * *."

Accordingly, the Local 802's 1½% tax is within the statutory term "membership dues" in Section 302 and the authorization forms are therefore legal.

## II.

The basis of the plaintiff's challenge under Section 101 of the Landrum-Griffin Act, 29 U.S.C. § 411, is based upon what the plaintiffs allege was the "[d]efendant's unilateral and dishonest conversion of the 'local tax' into pretended 'membership dues.'" (Complaint, pars. 27–29) The most pertinent portion of Section 101 is subsection (a) (3) (A), which prescribes the methods by which "the rates of dues and initiation fees" may be increased:

"in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot * * *."

The only action of the Local falling within the purview of the Landrum-Griffin Act, see 29 U.S.C. § 411(a) (3), is the action taken on September 26, 1960, when the tax was reduced to 1½% and the phrase inserted: "The leader shall be held responsible for the collection and payment of this tax." Since the statute is directly concerned only with an increase in dues, that portion of the resolution concerning the reduction in the tax cannot violate the statute. The major thrust of the plaintiffs' argument is that the resolution of September 26, 1960 made the Local tax the obligation of the leader and the present methods of direct collection of the tax from members beginning in December, 1962 transformed that obligation to the membership without the statutory prerequisites.

Again, resort must be had to the history of the tax to determine whose obligation it was on September 14, 1959, the effective date of Section 101(a) (3), 29 U.S.C. § 411(a) (3).

■ In 1959, the standing resolutions did not mention the leader and read simply that the tax shall be "payable by and collected from all members." This language would dispel any contention that the obligation was upon any one other than the members. The introduction, effective January 1, 1961, that "The leader shall be held responsible for the collection and payment" of the tax did not change the nature of the obligation. The change can best be described in legal parlance as making the leader the agent for collection and, in effect, secondarily liable, while leaving the primary liability with the membership. Since the nature of the obligation did not change, there was no violation of Section 101(a) (3) when the union sought to collect the tax directly from the members by either direct billing or check-off authorizations.

The challenges to the Local's action based upon Sections 101(a) (1) (complaint par. 28) and 101(a) (2) (id. par. 29), 29 U.S.C. § 411(a) (1–2), are patently without merit and warrant mention only to dispel the possible intimation that they were overlooked.

### III.

■ Short shrift can be made of the plaintiffs' contention that the present methods utilized by Local 802 to collect the tax are violative of the By-Laws and standing resolutions imposing the tax.[1] Basically, the argument runs that the By-Laws say "the leader shall be held responsible for the collection and payment of the tax" and the present methods of direct billing and authorization forms violate the By-Laws. (See complaint, par. 31) It is difficult to see how the authorization forms violate the By-Laws

since, as has already been pointed out, the obligation is that of the membership, and the authorization forms are the only legal method by which the leader may transmit the tax to the union. See Cutler v. American Fed. of Musicians, supra. The argument that the By-Laws impose the tax only upon the leader and its direct collection from the sidemen violates the By-Laws has already been sufficiently considered.

### IV.

In view of the above there is no necessity to determine the issue of exhaustion of intra-union remedies. The defendant's request for attorneys' fees is denied.

For the foregoing reasons, the defendant Local's motion for summary judgment is granted with costs against the plaintiffs in the Schwartz action.

Settle judgment on notice.

---

[1]. While neither party questioned the jurisdictional basis of this claim, it would seem that this court would have pendent jurisdiction over the claim of violation of the Local's By-Laws. See Hurn v.

Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933) and Note, The Evolution and Scope of the Doctrine of Pendent Jurisdiction in the Federal Courts, 62 Colum.L.Rev. 1018 (1962).