Linwood T. FORD, on behalf of himself and all others similarly situated Middletown Rd. Gradyville, Pa. and Earl Henninger, on behalf of himself and all others similarly situated 308 N. Diamond St. Clifton Heights, Pa.

v.

METROPOLITAN DISTRICT COUNCIL OF PHILADELPHIA AND VICINITY OF the UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA.

Civ. A. No. 70–935.

United States District Court, E. D. Pennsylvania.

Dec. 28, 1970.

Stephen A. Sheller, Astor & Weiss, Philadelphia, Pa., for plaintiffs.

Leonard M. Sagot, Philadelphia, Pa., for defendants.

## OPINION

TROUTMAN, District Judge.

The plaintiffs, members of Local 845 of the United Brotherhood of Carpenters and Joiners, and also members of the defendant District Council, in their own behalf and on behalf of others similarly situated, seek an injunction restraining the defendant from collecting dues from the plaintiffs and other members and seeking damages and other appropriate relief. They contend that dues have been increased without a majority vote by secret ballot in violation of and as required by Section 101 and Section 102 of the Labor-Management Reporting and Disclosure Act (Landrum-Griffin Act), 29 U.S.C. §§ 411 and 412. Pertinent to this case, that Act provides that labor organization dues payable by members thereof shall not be increased or levied except by a majority vote by secret ballot at an appropriate meeting or by a majority vote in a membership referendum conducted by secret ballot. A referendum by secret ballot was here used.[1]

Plaintiffs contend that the referendum here conducted was in violation of 29 U.S.C. § 411. They contend that

---

1. The Act provides as follows:

"(3) Dues, initiation fees, and assessments.—Except in the case of a federation of national or international labor organizations, the rates of dues and initiation fees payable by members of any labor organization in effect on September 14, 1959 shall not be increased, and no general or special assessment shall be levied upon such members, except—

"(A) in the case of a local labor organization, (i) by majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot; or

"(B) in the case of a labor organization, other than a local labor organization or a federation of national or international labor organizations, (i) by majority vote of the delegates voting at a regular convention, or at a special convention of such labor organization held upon not less than thirty days' written notice to the principal office of each local or constituent labor organization entitled to such notice, or (ii) by majority vote of the members in good standing of such labor organization voting in a membership referendum conducted by secret ballot, or (iii) by majority vote of the members of the executive board or similar governing body of such labor organization, pursuant to express authority contained in the constitution and by-

the ballot was so prepared and submitted that members were confused in voting and casting their ballots and were not given the opportunity to vote against a dues increase and check-off without also voting against a proposed increase in wages. They rely heavily upon Sertic v. Cuyahoga, Lake, Geauga and Ashtabula Counties Carpenters District Council of United Brotherhood of Carpenters and Joiners of America, 6 Cir., 423 F.2d 515 (1970). There, the offending question appeared on the ballot as follows (page 519):

"(1) Shall the District Council negotiate a new 3-year agreement with a wage increase of at least $1.00 per hour plus a 2% gross wage assessment?"

The single issue thus presented contained multiple questions. The voter was faced with a package proposition which presented a dilemma. He could not approve the negotiation of a wage increase without simultaneously approving a two per cent assessment against his wages. He could not reject a wage assessment without rejecting a wage increase. The issue was so framed as to preclude a meaningful vote on the dues issue alone. The Court so held.

Here, an extended and elaborate letter (Exhibit B attached to the complaint) was submitted to each member explaining in detail the wage increase already negotiated by the defendant Council with the General Building Contractors. It further explained that General Building Contractors had agreed to a "dues check-off" and that such 5¢ check-off" was designed to eliminate an increase in "per capita tax", to eliminate a possible nine-dollar increase in monthly dues and equitably relieve unemployed and pensioned members of the burden of paying higher dues.[2] Having thus been informed in detail as to the wage package *and* the dues check-off *and* its purpose, it becomes crystal-clear that there was no intent to mislead the membership in the submission of the ballot. The purpose of the Labor-Management Reporting and Disclosure Act (29 U.S.C. § 411) is to assure that labor organizations adhere to the highest standard of responsibility and ethical conduct in administering the affairs of their organizations. Brooks v. Local No. 30, D.C., 187 F.Supp. 365, 367 (1960). The letter addressed to the membership (Exhibit B) reflects a great deal of effort, thought and attention designed to fully inform the membership and facilitate the casting of an intelligent ballot.

The ballot itself (Exhibit A attached to plaintiffs' complaint) again makes reference to the wage package, the details of the increase, the date of each increase, vacation benefits, health and welfare benefits, fringe benefits, etc., and a "District Council Field Dues Check-off of 5¢ per hour worked effective May 1, 1969".

Then follows the first issue or question as follows (Exhibit A):

To Vote For the Agreement Outlined Above Place "X" in Proper Place as Per Your Choice

Yes No
☐ ☐

Had the ballot contained nothing more, the voting member might well have been faced with a situation similar to that existing in the *Sertic* case, *supra*. However, to formalize and effect the actual "check-off" of dues, an amendment to the By-laws of the District Council (Exhibit E attached to plaintiffs' complaint) was required and, accordingly, a second

---

laws of such labor organization: Provided, That such action on the part of the executive board or similar governing body shall be effective only until the next regular convention of such labor organization."

2. The need for "more and more money * * * to operate various Union activities" has been recognized by the Courts. Sertic v. Cuyahoga, et al., 423 F.2d 515, 517 (1970).

question appeared on the ballot as follows:

## BY-LAW REFERENDUM

Your Delegates to the District Council voted unanimously in favor of changing our By-laws *to provide* for the Field Dues Check-off. If you accept the above Agreement, do you also vote to amend the By-laws *to provide* a Field Dues Check-off? (Emphasis ours)

Yes No

☐ ☐

It is evident that if in answer to the first question the "Agreement", (including as it did, the field dues check-off) had been rejected by a negative vote then a negative vote on the second question would consistently follow. But, if the "Agreement" had been accepted by an affirmative vote as to the first question, then the voting member now had the opportunity, by a negative vote, to reject the "check-off" by rejecting the proposed amendment to the Council By-laws. The preface to the second question twice said on its face that the By-law amendment was necessary "*To provide* for the Field Dues Check-off". While hindsight might result in some mild improvement in the language used, it seems clear that anyone who could read the language must have understood that a negative vote on the second question constituted a negative vote as to the implementation of a dues "check-off". This seems evident from the votes cast by more than 6000 members. Only 974 cast negative votes as to the first question, whereas 1769 cast negative votes as to the second question (see page 13 of defendants' brief in support of motion to dismiss complaint).

Certainly the membership in the instant case was far better informed than the membership in Brooks v. Local No. 30, 187 F.Supp. 365, where Judge Van-Dusen stated at page 367:

"The most difficult problem presented by these facts is whether the ballot used is a 'ballot' to increase dues * * * since it uses the word 're-duce,' although the clear effect of the proposal was to increase the dues * * *".

The ballot read (page 367):

"To reduce dues to $5.00 per month plus 10¢ per each hour of employment."

Judge VanDusen pointed out that the language used could have been "far clearer". However, he found no "intent to deceive or confuse in the language used." So here, the lengthy letter of explanation and the detail on the ballot itself dispels any thought of "intent to deceive or confuse" (page 368). Additionally, he found no evidence that the membership was "misled by the language on the ballot" (page 368). So here, the fact that 795 more negative votes were cast against the second question than the first establishes that the language on the ballot was not misleading. Judge VanDusen concluded that a violation of 29 U.S.C. § 411 had not been established and accordingly granted the defendants' motion to dismiss.

So here, we are faced with a motion to dismiss for failure "to state a claim upon which relief can be granted". We have before us, by way of the complaint and the attached exhibits, substantially all the information relevant and pertinent to the issues before us. Testimony from a given member or members of the Local or the Council that *they* did not understand or that *they* found the ballot confusing or ambiguous would be unconvincing in view of the language used on the informational letter and ballot and the results of the balloting. We will grant the motion to dismiss for failure to state a claim upon which relief can be granted.

The defendants' motion to dismiss is also grounded upon laches. In Brooks v. Local No. 30, *supra*, the plaintiffs delayed "over a month" in bringing the action. Although the Court granted the motion to dismiss on other grounds, it noted that it "could have" based its deci-

sion on the delay. Here, the plaintiffs were free to bring the action in October or November 1969, after internal Union procedures had been exhausted. However, it was not until April 8, 1970, that a complaint was filed. Thus, in the language of the Court in *Brooks*, we "could" ground our decision on delay, particularly since the check-off has apparently been in effect and in operation since May 1, 1969,[3] and suit was not filed until April 8, 1970.

The defendant also contends that this cause cannot be maintained as a class action. The complaint contains no specific allegations in support of a "class" action. None of the "prerequisites" of F.R.Civ.P. rule 23 are alleged. Aside from this, the results of the balloting create a situation not unlike that which existed in Giordano v. Radio Corporation of America, 3 Cir., 183 F.2d 558 (1950). There, the Circuit Court remanded the case with instructions to "dismiss the complaint". In so doing the Court said as follows at pages 560 and 561:

 It is true, as the plaintiff argues, that the membership of an unincorporated labor union may constitute a class on whose behalf representatives may bring a true class suit to vindicate the common rights of the members as such. But Federal Civil Procedure Rule 23(a), 28 U.S.C.A., provides that the representatives of the class who bring the suit must be such 'as will fairly insure the adequate representation of all.' Here the affidavits upon which the court acted make it perfectly clear that the membership of Local 103 is sharply divided on the very question involved in this case, the expulsion of the plaintiff and his associates. Indeed a majority of the members who voted on the question at a membership meeting held on January 11, 1950, voted to sustain their expulsion. With a class thus sharply divided in opinion it would be absurd to say that the leader of one faction in the internecine

struggle could adequately represent the whole membership. The finding of the district court on this point must be set aside as clearly erroneous.

 It follows that the suit cannot be sustained as one brought on behalf of the whole membership of Local 103 as a class. Nor can it be sustained as brought on behalf of all members of Local 103 with the exception of defendants Leto and Fox and those members acting in concert with them. This is but another way of describing those members of the Local who are at the moment in agreement with the plaintiff. This is not such a class as may support a true class suit for it is too ill-defined and ephemeral in make-up. Those who agree with the plaintiff today may be persuaded tomorrow to take sides with his opponents in the Local. In a true class suit the plaintiffs stand in judgment for the class and a judgment for or against the plaintiffs benefits or binds each member of the class personally under the principles of res judicata. The members of the class must, therefore, be capable of definite identification as being either in or out of it. Such identification would not be possible in a case, such as this, of fluid factional groups in a labor union.

 The suit must, therefore, be regarded as brought by the plaintiff either solely to redress his own personal grievances against the defendants or possibly to redress the grievances of all the sixteen individuals whose expulsion has been voted. In the latter case it would be a spurious class suit, rather than a true one, since the individual rights of each of the sixteen are several rather than joint, common or secondary. But since there are only fifteen other members of this class and they are all employees of the corporate defendant in Camden, where the district court sits, it could hardly be held that they

3. See Ballot—Exhibit A.

constitute a class 'so numerous as to make it impracticable to bring them all before the court.' None of them has intervened in the suit. It must be concluded, therefore, that the suit, if it may be entertained at all, must be regarded as brought by the plaintiff for his own benefit solely."

In Cox v. Hutcheson, D.C., 204 F.Supp. 442 (1962), similar language was used by the Court and it was noted that the membership of the Local was "sharply divided". We have grave doubts that plaintiffs will fairly insure the adequate representation of all of the class they seek and purport to represent. To the extent that the complaint "attempts to state a class action" it might well be the subject of dismissal. Cox v. Hutcheson, *supra*, at page 447. Likewise, see Green v. Wolf Corp., 2 Cir., 406 F.2d 291 (1968); Demarco v. Edens, 2 Cir., 390 F.2d 836 (1968); Cypress v. Newport News, etc., 4 Cir., 375 F.2d 648 (1967); Fidelis Corp. v. Litton Industries, Inc., D.C., 293 F.Supp. 164 (1968).

The defendant also argues that this Court is without jurisdiction. Subject to the possible need for a technical amendment of the complaint, we find no merit in this contention.

Similarly, there is no need to reach other contentions advanced by the defendant.

For the reasons stated, we will dismiss the complaint. We reach such conclusion only after carefully analyzing specific arguments advanced by the plaintiffs. For example, they contend (page 5 of their memorandum of law) that a voting member might have assumed that a "no vote on the contract would be added together with those who voted no on the By-law amendment". Nothing in the language of the informational letter or ballot suggests such assumption. In any event, the total negative votes on both questions (974 + 1769 = 2743) would not have defeated the second question on which a total of 6196 votes were cast. (See page 2 of defendants' brief in support of motion to dismiss.)

It is further suggested that voting members may have concluded that they were voting upon *a* field dues check-off in the future and not *the* check-off in question. The reference in the ballot to a specific check-off in the amount of "5¢ per hour worked effective May 1, 1969", and the additional information in the accompanying letter affords no basis for plaintiffs' contention.

Likewise, the contention (page 8 of plaintiffs' memorandum) that a voting member may have read the ballot as "Meaning the Management had agreed to pay its employees an *additional* 5¢ per hour which was to be used to pay dues to the Local Unions" is without merit. The language in the ballot *and* the informational letter repeatedly states *exactly* what wage increases and fringe benefits are being paid by the employer. We need not discuss other less persuasive arguments advanced by the plaintiffs.

### ORDER

And now, this 28th day of December, 1970, it is ordered that defendants' motion to dismiss the complaint is granted.

