937 F.2d 1132
 137 L.R.R.M. (BNA) 2945, 119 Lab.Cas. P 10,828
 Claude COREA and Raymond Lavery, Plaintiffs-Appellants,
v.
Thomas J. WELO, David L. Quimby, Jack Cahill, Dan Molchan,
Larry Hocevar, Ray Zak, Cleveland & Vicinity District
Council of the United Brotherhood of Carpenters and Joiners
of America and United Brotherhood of Carpenters and Joiners
of America, and John Does, Defendants-Appellees.
 No. 90-3177.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 15, 1990.
Decided July 3, 1991.
 
 Theodore E. Meckler (argued), Meckler & Meckler, Cleveland, Ohio, for plaintiffs-appellants.
 Stephen A. Markus, Stephanie E. Trudeau (argued), Ulmer & Berne, Cleveland, Ohio, Frederick G. Cloppert, Jr., Russell E. Carnahan (argued), Cloppert, Portman, Sauter, Latanick & Foley, Columbus, Ohio, for defendants-appellees.
 Before KEITH, KENNEDY and SUHRHEINRICH, Circuit Judges.
 KEITH, Circuit Judge.
 
 
 1
 Plaintiffs-appellants Claude Corea and Raymond Lavery (collectively "plaintiffs") appeal the district court's January 19, 1990 grant of summary judgment in favor of defendants-appellees (collectively "defendants"): the Cleveland and Vicinity District Council of the United Brotherhood of Carpenters and Joiners of America ("District Council"); the United Brotherhood of Carpenters and Joiners of America ("International");[1] and individual members of the District Council, Secretary-Treasurer, Thomas J. Welo, President, David L. Quimby, Trustees, Jack Cahil, Dan Molchan, Larry Hocevar and Ray Zak, as well as certain undesignated John Does (collectively "individual defendants"). Plaintiffs contend that the District Council's discontinuation of a Coordinated Housing Organizing Program ("CHOP" or "Program") without a rank and file vote violated section 101 of the Labor Management Reporting and Disclosure Act of 1959 (the "LMRDA" or the "Act"), 29 U.S.C. Sec. 411 [hereinafter Sec. 411]. Plaintiffs also allege that defendants violated section 501 of the Act, 29 U.S.C. Sec. 501 [hereinafter Sec. 501], by breaching their fiduciary duties. Plaintiffs further claim that the federal district court has jurisdiction under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Sec. 185 [hereinafter Sec. 185], to address claims that defendants' actions violated various provisions of the union constitution and bylaws. For the reasons set forth below, we AFFIRM the district court's grant of summary judgment in favor of defendants.
 
 I.
 A.
 
 2
 This case arises out of a dispute over the elimination of CHOP, a project which was aimed at organizing nonunion labor in the residential construction industry. The elimination of the Program resulted in plaintiffs losing their appointed positions as CHOP organizers. Plaintiffs had been employed by the Ohio State Council of the United Brotherhood of Carpenters and Joiners of America[2] ("State Council") from 1975 through 1985, and thereafter by the District Council, as CHOP organizers.
 
 
 3
 The International initiated and promoted CHOP as a means of organizing carpenters and contractors engaged in the construction of residential housing. The Program sought to protect the interests of union members by seeking to prevent the spread of nonunion work in this sector of the construction industry. If left unchecked, the spread of non-union construction ostensibly could have had an adverse effect on the wages and working conditions of union membership.
 
 
 4
 The International presented the original proposal to institute CHOP in the Cleveland area to the District Council in 1973. Because the Program would be funded by a four cents-per-hour assessment on each union member, it was necessary, under the provisions of Sec. 411, as well as the International's constitution and the District Council's bylaws, to submit the proposal to the rank and file members of the district for their approval. The proposal was defeated by referendum in 1973 and again in April 1974. In February 1975, CHOP was approved by referendum. In May 1975, the funding mechanism was instituted.
 
 
 5
 From May 1975 until June 1985, CHOP was operated under the auspices of the State Council. Assessments collected by the District Council from its rank and file members funded CHOP. Plaintiffs were among the first to be hired as CHOP organizers by the State Council in June 1975. Plaintiffs were laid off periodically during this period because of the District Council's frequent delays in sending CHOP funds to the State Council. In April 1985, as a result of an ongoing dispute over the manner in which State Council funds were being spent, the delegates of the District Council voted to discontinue all payments to the State Council, including the four cents-per-hour wage assessment for CHOP. In June 1985, delegates of the District Council voted to administer their own version of CHOP and hired plaintiffs as organizers. The District Council's rank and file membership did not vote on either of these decisions.
 
 
 6
 During the next year and a half, plaintiffs were laid off periodically because of a shortage of CHOP funds. During this period, plaintiffs made several requests to examine the District Council's financial records in order to determine how much money was actually spent on the Program. The District Council did not provide this information.
 
 
 7
 In December 1986, plaintiffs were laid off by the District Council once again and were told that they would be unable to return to work until the following spring. However, on April 21, 1987, the Executive Committee of the District Council voted to discontinue CHOP and on April 23, 1987, the delegates of the District Council approved this recommendation. In making its decision to eliminate CHOP, the District Council did not refer the matter for a vote of the rank and file. The discontinuation of CHOP terminated the four cents-per-hour assessment and ended plaintiffs' employment as CHOP organizers.B.
 
 
 8
 On May 18, 1987, plaintiffs filed a grievance with the International regarding the District Council's discontinuation of CHOP without a rank and file vote, its failure to provide financial information regarding CHOP's revenues and expenditures, and the delays in providing funds for CHOP during the period when the State Council operated it. The General President of the International denied plaintiffs' grievance on June 22, 1987. Plaintiffs appealed the decision to the General Executive Board, which sustained the General President's ruling.
 
 
 9
 After exhausting their internal union remedies, plaintiffs filed suit in district court on December 16, 1987. Plaintiffs invoked the district court's jurisdiction under 29 U.S.C. Secs. 185, 412, 501; and under 28 U.S.C. Secs. 1331, 1337.
 
 
 10
 On January 27, 1988, the International filed a motion to dismiss. On February 25, 1988, the district court granted in part and denied in part the International's motion. The district court dismissed plaintiffs' claims asserted under 29 U.S.C. Sec. 185 finding that the International's constitution is not a contract between the individual members of the union and their union for the purposes of Sec. 185. On July 26, 1988, the International filed a motion for summary judgment on plaintiffs' remaining claims. On September 7, 1988, the District Council and individual defendants filed a motion for summary judgment. On January 19, 1990, the district court granted defendants' motions for summary judgment.
 
 
 11
 Plaintiffs filed a timely notice of appeal with this court on February 16, 1990.
 
 II.
 
 12
 Our review of a grant of summary judgment is de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990); Buckner v. City of Highland Park, 901 F.2d 491, 494 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 137, 112 L.Ed.2d 104 (1990). Federal Rule of Civil Procedure 56(c) permits summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As we consider the appropriateness of summary judgment in the instant case, we must examine the record taken as a whole to determine whether the nonmoving party has raised a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); see also Celotex v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 
 13
 Our inquiry in this case is also directed by other considerations. The LMRDA encourages unions to provide means by which their members can seek relief within the organization if any of the enumerated rights defined by the statute are infringed upon and gives union members the right to sue on the same basis. 29 U.S.C. Secs. 411(a)(4), 412. It has consistently been held, however, that while union members have the right to sue to enforce their rights under LMRDA, the courts should be reluctant to interfere in internal union affairs. In Brock v. Int'l Union of Operating Eng'rs, 790 F.2d 508 (6th Cir.1986), we stated that the LMRDA, was intended to be applied realistically, but with due regard for a balance between the rights of industrial union members and the real need of elected union officials to carry out their duties without the "debilitative drag of tardily asserted challenges to their authority." Id. at 512.
 
 III.
 
 14
 Plaintiffs raise several issues on appeal. Primarily, plaintiffs contend that the district court erred in granting summary judgment because Sec. 411 requires the union to permit the rank and file to vote or otherwise participate in the decision to terminate the wage assessment, thus effectively terminating CHOP, the program which it funded and which the rank and file originally voted into existence. Plaintiffs argue that the failure to submit the wage assessment termination to a referendum deprived members of the right to cast a meaningful vote and to participate fully in the decision-making process as guaranteed by Secs. 411(a)(1), (2). Plaintiffs further allege that the union's conduct in failing to allow rank and file voting or other participation in the decision to terminate CHOP constituted a denial of the equal right to vote protected by Sec. 411(a)(1). They reasoned that the two groups of members--those who initially supported CHOP and those who initially opposed it--were not treated equally due to the manner in which the program was terminated. Next, plaintiffs argue that defendants' conduct with regard to the administration of CHOP funds and the unilateral elimination of CHOP constituted a violation of the fiduciary duty provisions under 29 U.S.C. Sec. 501. Finally, plaintiffs maintain that the district court erred in dismissing plaintiffs' claims, alleging breaches of the union bylaws and constitution, which were premised on 29 U.S.C. Sec. 185.
 
 
 15
 Defendants argue that the union was not required to put the decision to terminate CHOP to the rank and file for a vote and thus did not violate the provisions of 29 U.S.C. Sec. 411. Defendants maintain that plaintiffs were not denied their equal right to vote because they were not denied a vote given to other members or classes of members. Defendants contend they did not breach a fiduciary duty to plaintiffs under 29 U.S.C. Sec. 501. Defendants also contend they did not breach the union constitution or bylaws and that, even if they had, such conduct would not give rise to federal jurisdiction for a breach of contract claim by plaintiffs against them under 29 U.S.C. Sec. 185. We find defendants' arguments persuasive.
 
 A.
 1.
 
 16
 Plaintiffs argue that LMRDA was created to assure "full and active participation by the rank and file in the affairs of the union." American Fed. of Musicians v. Wittstein, 379 U.S. 171, 182-83, 85 S.Ct. 300, 307, 13 L.Ed.2d 214 (1964). Plaintiffs argue that the absence from 29 U.S.C. Sec. 411(a)(3) of an explicit requirement to vote to terminate an assessment is not dispositive of the instant case. Thus, plaintiffs argue, the district court erred in relying on Schwartz v. Associated Musicians of Greater New York, Local 802, 237 F.Supp. 149 (S.D.N.Y.1963), aff'd, 340 F.2d 228 (2d Cir.1964), which holds that a mere reduction in dues may occur without a vote of the rank and file, consistent with 29 U.S.C. Sec. 411(a)(3).
 
 
 17
 Defendants counter that the only federal statutory requirement for a referendum vote is expressly limited to dues increases. There are no provisions in the International's or the District Council's constitutions or bylaws which would require a referendum to reduce or discontinue dues. We find defendants' argument persuasive.
 
 
 18
 Title I of the LMRDA, and specifically section 101, 29 U.S.C. Sec. 411, is the Bill of Rights for union members. Title I protects rank and file union members who speak out against union leaders or who seek elective union offices. United Steelworkers of America v. Sadlowski, 457 U.S. 102, 109, 102 S.Ct. 2339, 2344, 72 L.Ed.2d 707 (1982). It guarantees every union member the rights of free speech and assembly and equal voting rights. Title I also provides for private enforcement actions to further the primary objective of the LMRDA, "ensuring that unions [are] democratically governed and responsive to the will of their memberships." Sheet Metal Workers Int'l Ass'n v. Lynn, 488 U.S. 347, 352, 109 S.Ct. 639, 643, 102 L.Ed.2d 700 (1989) (quoting Finnegan v. Leu, 456 U.S. 431, 436, 102 S.Ct. 1867, 1870, 72 L.Ed.2d 239 (1982)).
 
 
 19
 The pervading premise of LMRDA is that there should be "full and active participation by the rank and file in the affairs of the union" and that votes should be meaningful; this end is accomplished under a system of representative union government. Wittstein, 379 U.S. at 182-83, 85 S.Ct. at 307.
 
 
 20
 LMRDA guarantees equal voting rights and the rights of freedom of speech and assembly to rank and file members of labor unions. 29 U.S.C. Sec. 411(a)(3) outlines procedures which unions must follow when imposing dues, initiation fees or any additional assessment upon its rank and file membership:
 
 
 21
 [N]o general or special assessment shall be levied upon ... members [of any local labor organization] except ... (i) by a majority vote by secret ballot of the members in good standing voting at a general or special membership meeting, after reasonable notice of the intention to vote upon such question, or (ii) by majority vote of the members in good standing voting in a membership referendum conducted by secret ballot....
 
 
 22
 29 U.S.C. Sec. 411(a)(3). LMRDA, the International's constitution, and the bylaws of the District Council are all silent as to the procedures required to adopt a proposal which would have the effect of decreasing or eliminating an assessment. In reaching the conclusion that this requirement of a vote to impose an assessment does not extend to or encompass the situation where an assessment is decreased or terminated, the district court properly relied on Schwartz, 237 F.Supp. at 149.
 
 
 23
 Schwartz held that a union organization acts within its power to reasonably regulate the voting rights of its members when the union decides to reduce or eliminate dues or assessments without a vote of the rank and file. Id. at 155. In Schwartz, union members challenged a union's resolution reducing a local work tax and shifting primary responsibility for its collection to union members. The resolution fell within the purview of the "membership dues" provision of 29 U.S.C. Sec. 411(a)(3). The court stated "since the statute is directly concerned only with an increase in dues, that portion of the resolution concerning the reduction in the tax cannot violate the statute." Id.
 
 
 24
 In Burroughs v. Operating Eng'rs Local Union No. 3, 686 F.2d 723 (9th Cir.1982), the Ninth Circuit disagreed with Schwartz. This apparent disagreement does not, however, detract from Schwartz' proposition that Sec. 411(a)(3) does not require a membership vote merely to reduce fees. The source of Burroughs' disagreement with Schwartz is derived from the different context of each case. The Burroughs court was called upon to construe the proper definition of the phrase "rates of dues" within the meaning of Sec. 411(a)(3). In Burroughs, union bylaws permitted automatic increases in the "rates of dues" payable by the union members without a majority vote of the union membership. However, the bylaws also provided for union leadership to recommend the temporary or permanent suspension of all or part of the increase. The formula was as follows: for each dollar per day increase in the total wage package in the master collective bargaining agreement, the "dues rate" would automatically increase by fifty cents per month. The Burroughs court viewed this formula as being not merely an automatic increase, but also as placing a "ceiling on the maximum increase permitted, leaving it to the union officers to determine if, and if so by how much, the increase should be smaller than that permitted." Id. at 729. The union in Burroughs, relying on Schwartz, argued that the provision granting union leadership the discretion to suspend all or part of the increase was irrelevant to the court's decision because it merely permitted union management to reduce the rate of dues, not to increase it. The Burroughs court rejected "such a technical construction" of Sec. 411(a)(3) in light of its evident purpose and in light of the particular facts of the case. Id. at 730. Specifically, the court stated:
 
 
 25
 By providing the executive board with unlimited discretion to determine whether it shall recommend total suspension of an increase in the quarterly "dues rate" which would otherwise take effect, the by-law deprives the union membership of its right to determine whether the rate of dues will increase at all. The union leadership may have the discretion to recommend a reduction in the automatic increase of dues prescribed by [the bylaw], but it has the power to determine, without submitting the matter to a vote of the union members, whether or not dues will increase. This is a result we believe Congress intended to prohibit when it enacted section 101(a)(3).
 
 
 26
 Id. at 730 (emphasis in the original).
 
 
 27
 Burroughs and Schwartz contemplated different situations. In the instant case, we are not presented with the circumstance presented in Burroughs where the discretion to reduce or suspend an assessment is coupled with the power to determine, without a vote of the union membership, whether dues will be increased. Nor was Schwartz confronted with this specific question. Only the discretion to reduce or eliminate an assessment is at issue in the instant case. LMRDA's concern with the circumvention of union democracy by unilateral action on the part of union officials is implicated more in the case of instituting or increasing dues because an increased monetary assessment is a tax burden placed on the membership. 29 U.S.C. Sec. 411. Where, as here, elected union representatives decide only to terminate an assessment, this concern is not implicated. The danger of a unilateral increase in the CHOP assessment is not present in this case, nor is there any showing that defendants in any way sought to implement such a unilateral increase. For this reason, this case falls within the purview of Schwartz rather than Burroughs.
 
 
 28
 In determining that 29 U.S.C. Sec. 411(a)(3) does not require a vote to eliminate a wage assessment, we examine the purpose behind the requirement of a vote in the case of instituting or increasing a wage assessment. The congressional purpose underlying Sec. 411 is to safeguard and preserve union democracy by " 'promot[ing] the full and active participation by the rank and file in the affairs of the union....' " Hall v. Cole, 412 U.S. 1, 7-8, 93 S.Ct. 1943, 1947, 36 L.Ed.2d 702 (1973) (quoting Wittstein, 379 U.S. at 182-83, 85 S.Ct. at 307). Democratic union organization provided by Sec. 411 was designed to shield union members from arbitrary, autocratic and despotic control by union officers and leaders. Id. In particular, Sec. 411(a)(3) prohibits union leadership from unilaterally imposing arbitrary financial exactions on its union membership. Section 411(a)(3) was designed to vest control over increases in dues or fee assessments in union membership, not union management. As such, Sec. 411(a)(3) "was the product of congressional concern with widespread abuses of power by union leadership." Finnegan, 456 U.S. at 435, 102 S.Ct. at 1870.
 
 
 29
 In Sertic v. Cuyahoga, Lake, Geauga & Ashtabula Counties Carpenters Dist. Council, 423 F.2d 515 (6th Cir.1970), this Court stated that the purpose of Sec. 411(a)(3) is to prevent the unilateral imposition of financial exactions on union membership. In Sertic, we were called upon to determine whether a referendum resulting in an increase in dues of labor union members violated Sec. 411(a)(3), where the form of ballot gave members no opportunity to vote against a dues increase without also voting against negotiation of a wage increase. In determining that the ballot violated Sec. 411(a)(3), this Court stated:
 
 
 30
 In enacting the statute Congress intended to restore to members of labor unions the right to participate freely in the government of their union. This necessarily would include the right to vote "yes" or "no" on increases of dues or assessments without coercion.
 
 
 31
 Id. at 521.
 
 
 32
 Thus, the reasons underlying the requirement of a membership vote to increase assessments do not pertain to the instant case where union members did not vote on the elimination of the four cents per hour CHOP wage assessment. The instant case is distinguishable from Sertic, where union leadership coerced union members to vote on a wage increase and a wage assessment increase simultaneously. This case does not involve such an abuse of power by union leadership as was involved in Sertic. Unlike the Burroughs situation, the discretion of the District Council here to eliminate the CHOP assessment was not coupled with the power to increase the CHOP assessment, thereby depriving the membership of a meaningful vote as is required in the instance of instituting any monetary assessment.
 
 
 33
 We do not find that the district court erred in relying on Schwartz to determine that the District Council did not violate Sec. 411(a)(3) when it decided that the dissolution of CHOP would not be submitted to a vote of the rank and file. The District Council was generally authorized to make such a decision by section three of its bylaws, which states that the District Council has "legislative and executive powers on all matters relating to the general interest and welfare of [the] Local Unions and their members." The District Council was thus not required to seek a vote of the union's rank and file in order to eliminate a program which would have the effect of revoking an assessment. We hold, therefore, that the district court properly determined that the District Council's decision to terminate CHOP without a rank and file vote was not a violation of the LMRDA.
 
 2.
 
 34
 We now direct our inquiry to whether, in the absence of a clear and affirmative statutory directive, as is the case here, the elimination of CHOP itself without a vote violated plaintiffs' right to cast a meaningful vote and to fully participate. Despite our conclusion that the termination of the CHOP wage assessment without a rank and file vote did not violate LMRDA, Sec. 411(a)(3) in particular, we address plaintiffs' argument that the rights found in Sec. 411(a)(1), (2) were violated when defendants terminated CHOP itself, not merely the funding mechanism. Because the democratic debate which characterized the program's enactment was absent when the program was eliminated, plaintiffs assert they were denied the right to a meaningful vote.
 
 
 35
 In support of their position that a rank and file vote was required to terminate CHOP, plaintiffs assert that this case is governed by 29 U.S.C. Sec. 411(a)(1), (2)[3] and not solely 29 U.S.C. Sec. 411(a)(3), as determined by the district court. Section 411(a)(1) guarantees the equal right to vote and to participate in the decision making process. 29 U.S.C. Sec. 411(a)(1). Section 411(a)(2) guarantees the rights of free speech and assembly. Id. Sec. 411(a)(2).[4] Plaintiffs argue that Sec. 411(a)(3) does not apply because, while it discusses the requirements for imposing an assessment, it does not speak to the issue of what procedures must be followed in order to eliminate a program such as CHOP which is funded by a wage assessment upon the membership. Defendants respond that plaintiffs' invocation of the meaningful vote policy is inapplicable where, as here, no vote was required and no vote was held. We find the defendants' argument persuasive.
 
 
 36
 Our outcome on the question of whether a referendum is required for the termination of a wage assessment determines whether defendants' conduct denied plaintiffs and other rank and file members the right to cast a meaningful vote and the right to fully participate in the affairs of the union.
 
 
 37
 LMRDA provisions pertaining to voting rights provide that:
 
 
 38
 Every member of a labor organization shall have equal rights and privileges within such organization ... to vote in elections or referendums of the labor organizations ... and to participate in the deliberations and voting upon the business of [membership] meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
 
 
 39
 Id. Sec. 411(a)(1).
 
 
 40
 Section 101(a)(2) of LMRDA guarantees that union members have the right to assemble freely with other members and to express their views on business properly before a meeting of the union membership. Id. Sec. 411(a)(2). "[T]his Court is not unfettered in its determination of what constitutes 'full and active participation' or a 'meaningful vote.' " Blanchard v. Johnson, 532 F.2d 1074, 1078 (6th Cir.), cert. denied, 429 U.S. 869, 97 S.Ct. 180, 50 L.Ed.2d 149 (1976). The rights guaranteed by Title I of LMRDA are subject to reasonable rules and regulations by the union. Calhoon v. Harvey, 379 U.S. 134, 138-39, 85 S.Ct. 292, 295, 13 L.Ed.2d 190 (1964).
 
 
 41
 In Sertic, this Court held that union members were entitled to a meaningful vote under LMRDA. 423 F.2d at 521. In arriving at this conclusion, we construed the Act as effectuating the congressional intent to guarantee to members of labor organizations the right to participate freely in the government of their union. Id. " 'Only a union responsive to the rights of all its members can achieve the ideals of responsibility, opportunity and self-determination that are recognized as fundamental values in the labor movement.' " Id. (quoting Navarro v. Gannon, 385 F.2d 512, 518 (2d Cir.1967), cert. denied, 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968)). Similarly, the Supreme Court has stated that "[i]n order to ensure that the union members' democratic right to decide on a dues proposal is meaningful, the right to exchange views on the advantages and disadvantages of such a measure must be protected." Lynn, 488 U.S. at 358, 109 S.Ct. at 646. Similarly, Sertic and Lynn do not dictate a result contrary to the one reached here, primarily because no vote was put to the membership, nor was one required. Since no vote was held, the questions of whether the vote was meaningful and whether members were afforded an opportunity for full participation are necessarily answered in the negative.
 
 
 42
 The right to a meaningful vote and full participation is necessarily dependent on the dissemination of sufficient information so as to permit rank and file members to "exercise their statutorily guaranteed right to an informed vote...." Blanchard, 532 F.2d at 1079. Blanchard contemplated the problem of lack of sufficient information on an affiliation proposal submitted to a membership referendum. We held in Blanchard that Sec. 411(a)(1) did not disallow seriatim voting on affiliation proposals so long as information about all proposals received by the Executive Board was disseminated to the membership to allow a reasoned and informed vote on a proposal which was to appear on the ballot. Id. at 1078-79. Thus, Blanchard dealt primarily with the circumstance where the sufficiency of the information contained in a proposal was at issue, not whether the issue should have been submitted to the membership for a referendum in the first instance, as is the issue presented in this case. Blanchard does not stand for the proposition that all affiliation proposals must be submitted to the membership for a referendum. Id. at 1077. Blanchard merely requires full disclosure of the terms of all proposals submitted to the membership for a referendum in order to ensure that the vote is meaningful and that the membership has fully participated in the decision making process. Id. For these reasons, plaintiffs' reliance on Blanchard is misplaced in this context.
 
 
 43
 The district court did not err in finding that the District Council's decision to terminate the funding for CHOP without submission to the membership for a referendum was governed by Sec. 411(a)(3). Thus, we reiterate that we find the district court's determination, that defendants' actions did not violate 29 U.S.C. Sec. 411(a)(3), proper.
 
 3.
 
 44
 Plaintiffs claim that they were denied the equal right to vote when CHOP was eliminated without a rank and file vote, in violation of 29 U.S.C. Sec. 411(a)(1). Plaintiffs reason that because the membership exercised its right to vote by ratifying a wage assessment to fund CHOP in the first instance, those members who voted for CHOP subsequently had their vote obliterated without an opportunity for comment. Those who voted against CHOP were afforded preferential treatment through the process implemented to terminate the Program. Defendants respond that failure to conduct a vote is not a denial of the equal right to vote, since all members have been treated equally. We find defendants' arguments persuasive.
 
 
 45
 Where there is no discrimination between members of a union there is no denial of the equal right to vote. Nienaber v. Ohio Valley Carpenters Dist. Council, 652 F.2d 1284, 1286 (6th Cir.1981). In Calhoon the Supreme Court held that:
 
 
 46
 Plainly, ... [Sec. 411(a)(1) ] is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote. And Congress carefully prescribed that even this right against discrimination is "subject to reasonable rules and regulations" by the union.
 
 
 47
 Calhoon, 379 U.S. at 139, 85 S.Ct. at 295.
 
 
 48
 Where "union members ... have not been discriminated against in any way and have been denied no privilege or right to vote or nominate which the union has granted to others," there is no violation of the guarantee of the equal right to vote. Id. (emphasis added). Thus the issue under Sec. 411(a)(1) is not whether members were treated properly or fairly, but whether they were treated equally.
 
 
 49
 In Nienaber, this Court addressed the issue of whether plaintiff union members were entitled to relief pursuant to Sec. 411(a)(1) from union bylaws and a constitution adopted by mail ballot not in conformity with the referendum procedures of the then-applicable union constitution and bylaws. The nonconformity attendant to the mail ballot procedure resulted from the absence of members' participation and the lack of registration stubs on ballots. We held there was no cognizable Sec. 411(a)(1) violation of the equal right to vote because the nonconformities attendant to the mailing procedure did not result in a "discriminatory deprivation of an individual's right to cast a meaningful vote." Nienaber, 652 F.2d at 1286.
 
 
 50
 The parties urge the court to adopt conflicting constructions of the equal right to vote. Plaintiffs argue as follows: the failure to conduct a vote implies that there was a denial of the equal right to vote guaranteed by LMRDA. Plaintiffs correctly construe Trail v. Int'l Bhd. of Teamsters, 542 F.2d 961 (6th Cir.1976), to stand for the proposition that the union's refusal, in that case, to conduct a vote constituted the basis for the denial of the equal right to vote claim. Id. at 966.
 
 
 51
 In Trail, this Court upheld the district court's refusal to dismiss the plaintiff members' claim that the equal right to participate in referendums established by Sec. 411(a)(1) had been violated by defendant union's failure to submit to union members for ratification a "Michigan Rider" to a "Central States Agreement." The potential denial of the equal right to vote in Trail was premised upon the following facts. The plaintiffs in Trail were truck drivers who lived in Michigan and who were employed by various Michigan trucking companies. These trucking companies bargained collectively with the defendant unions in Trail. Three collective bargaining agreements pertained to the Trail plaintiffs' employment: the National Master Freight Agreement; the Central States Agreement, negotiated as a supplement to the national agreement for the central states area; and the Michigan Rider, negotiated as a rider to the Central States Agreement for the state of Michigan. Local unions and Michigan employers negotiated the Michigan Rider on behalf of the Michigan truckers. Compensation under the Central States Agreement was greater, but plaintiffs were compensated according to the lesser provisions of the Michigan Rider. The Michigan Rider to the Central States Agreement was not ratified by Michigan truck drivers according to the provisions of the International union constitution. The Central States Agreement and the National Master Freight Agreement, however, had been properly ratified. Further, in Trail, there was a strong likelihood that had the Michigan Rider been put to the membership for ratification, the members would have declined to do so. Id. at 964. Thus, the Michigan Rider, a less favorable collective bargaining agreement, was imposed without a vote because the union had surrendered the more favorable terms of the Central States Agreement solely to grant Michigan trucking employers an economic benefit at the expense of Michigan truck drivers.
 
 
 52
 Since the Trail court allowed the equal right to vote claim in this context, plaintiffs are correct in stating that an absence of a vote may be grounds for a claim of the denial of the equal right to vote. In upholding the district court's refusal to dismiss the equal right to vote claim, this Court noted in Trail that:
 
 
 53
 There being no factual record before ... this court, no determination can now be made as to why and how ratification votes were limited to the national and central states agreements excluding the Michigan Rider or as to whether there were "Riders" negotiated in other states and made subject to ratification votes there.
 
 
 54
 Id. at 966.
 
 
 55
 Moreover, the central factor which distinguishes the instant case from Trail is that in Trail the union members were entitled to a vote on the Michigan Rider. The right to ratify collective bargaining agreements was purportedly guaranteed by the union constitution. In the instant case, no such entitlement exists; there is no requirement that rank and file union members vote on the termination of a wage assessment. In Trail, however, in affirming the district court's refusal to dismiss union members' claim of entitlement to an equal vote on referendums conveyed by Sec. 411(a)(1), the court stated:
 
 
 56
 We believe the word "referendum" is sufficiently broad to guarantee to all union members a right to vote on a union contract which any of them enjoy.
 
 
 57
 Id.
 
 
 58
 Thus, the claim of a denial of equal voting rights was premised on the instance where conceivably no vote was held where one was required.
 
 
 59
 In the instant case, plaintiffs have not established that, as rank and file members, they were treated differently than any other member of the rank and file as a result of the decision not to refer the issue of CHOP's termination to the general membership. Calhoon, 379 U.S. at 139, 85 S.Ct. at 295. Thus, no discrimination occurred and plaintiffs' equal rights to vote as rank and file members were not violated by the manner in which CHOP was terminated. Moreover, the right to an equal vote conveyed by Sec. 411(a)(1) does not extend to the termination of a wage assessment; nor does any provision in the International's constitution or bylaws require a vote in order to discontinue an assessment such as CHOP. Accordingly, we hold that the district court properly determined that the District Council did not violate the equal voting rights provisions of the LMRDA when it did not submit the proposal to eliminate CHOP to its rank and file members.
 
 B.
 
 60
 Plaintiffs next argue that the district court erred in determining that defendants did not violate their fiduciary duties under section 501 of the LMRDA, 29 U.S.C. Sec. 501.[5] Plaintiffs claim that the individual defendants violated their fiduciary duties by failing to separate CHOP funds from the District Council's general fund and by failing to make all CHOP expenditures from a separate CHOP account. Plaintiffs contend the foregoing conduct violated the International's constitution, as well as sections 13 and 14 of the bylaws in violation of 29 U.S.C. Sec. 501. Plaintiffs also assert that the International is liable under Sec. 501 because it failed to take action to stop the individual defendants from breaching their fiduciary duty. Finally, plaintiffs claim that both the District Council and the International violated section 501 when they did not provide the membership with the opportunity to vote on the elimination of CHOP. The International argues that the District Court did not err in making its determination that defendants' actions constituted reasonable expressions of the powers vested in the District Council and its officers and thus did not violate Sec. 501. We find the International's argument persuasive.
 
 
 61
 The primary purpose of 29 U.S.C. Sec. 501(a) is to ensure that union officials do not violate their fiduciary duties to the members of their organization by engaging in self-dealing or the misuse of union funds, which they hold in trust. However, the statute is not meant as a vehicle for judicial oversight of union activity, but only as a means of redressing unreasonable and arbitrary actions by union officials. The federal courts do not sit as a "super review" board of internal union grievances unless there is evidence of impropriety in the proceedings. This section of LMRDA authorizes union members to seek reimbursement of improperly spent union funds in the same manner as a shareholders derivative suit. BLE Int'l Reform Comm. v. Sytsma, 802 F.2d 180, 184 (6th Cir.1986). As such, plaintiffs have the burden of showing that the individual defendants were without authorization to take the actions complained of, that the union assets were the subject of self-dealing on the part of union officers, or that the funds were not utilized for the benefit of the union organization. Erkins v. Bryan, 785 F.2d 1538, 1544 (11th Cir.), cert. denied, 479 U.S. 960, 107 S.Ct. 455, 93 L.Ed.2d 402 (1986).
 
 
 62
 In McCabe v. International Bhd. of Elec. Workers Local Union No. 1377, 415 F.2d 92 (6th Cir.1969), this Court affirmed the district court's determination that union officials violated their fiduciary duties by receiving per diem payments in lieu of reimbursements for expenses. In concluding that this receipt amounted to the union officials obtaining increases in salary without approval, this court stated:
 
 
 63
 The broad scope of Sec. 501(a) has been acknowledged.... "Thus it plainly appears that the statute is broad in its reach. Officers and other union representatives may not act adversely to their organization or to the members as a group, or acquire a personal interest which is contrary to the interests of the organization.... The legislative history of the Act demonstrates that Congress intended that it should not be interpreted by the courts narrowly or strictly, but, to the contrary, that its confines are broad."Id. at 98 (emphasis in McCabe) (quoting Johnson v. Nelson, 325 F.2d 646, 650 (8th Cir.1963).
 
 
 64
 Accordingly, although Sec. 501 is generally regarded as a section designed to prevent fiscal mismanagement and fraud, it also contains nonfinancial aspects. Section 501 "has been interpreted to impose a general fiduciary duty upon union officials, above and beyond monetary involvement." See Wade v. Teamsters Local 247, 527 F.Supp. 1169, 1177 (E.D.Mich.1981). In Wade, the court held that union officials' violation of the union constitution by failure to hold monthly membership meetings was actionable under Sec. 501. Id. The court reasoned that union officials had caused union members to suffer "an invaluable and irreparable loss of democratic rights." Id. at 1178.
 
 
 65
 In this case, however, defendants have not violated any provisions in the International's constitution or the District Council's bylaws. Nor have defendants violated any statutory provisions by declining to submit the issue of CHOP's termination to the membership for a vote. Thus, since no deprivation of democratic rights has occurred, it is not necessary to invoke the more general fiduciary duties imposed on union officials by Sec. 501.
 
 
 66
 With regard to the question of mismanagement of funds, there is no such showing here that individual defendants engaged in any sort of self-dealing in regard to the union funds in question. Rather, it has only been shown that plaintiffs were paid their salaries by the District Council's general fund, out of funds designated for the Program, rather than from a separate CHOP fund. Plaintiffs were aware that the sole reason for this method of disbursement was administrative convenience. Therefore, we find that the district court properly determined that the heightened judicial scrutiny used when a union official has diverted union funds or property into his own hands is not warranted here. See Ray v. Young, 753 F.2d 386 (5th Cir.1985).
 
 
 67
 We find no evidence of bad faith in the record. The system established to pay CHOP was clearly a reasonable interpretation of the rules adopted by the District Council for its version of the program. While general funds were used to pay some of CHOP's expenses, the fund was immediately reimbursed by funds which had been collected for CHOP through the wage assessment. The District Council kept precise and complete records of the monies taken from the general fund which were used to pay the salaries of CHOP employees to keep the Program's expenditures separate from other general fund activities. Plaintiffs have failed to demonstrate that defendants acted out of self interest or that the expenditures of CHOP funds were not utilized for the benefit of the union when they were used to reimburse the general fund for the salaries of CHOP organizers. See Stelling v. IBEW Local 1547, 587 F.2d 1379 (9th Cir.1978), cert. denied, 442 U.S. 944, 99 S.Ct. 2890, 61 L.Ed.2d 315 (1979). Thus, we find no violations of Sec. 501 on this basis. Given this conclusion, we do not find it necessary to reach plaintiffs' contention that the International is liable for failing to stop defendants from breaching their fiduciary duties because we find no such breach here.
 
 C.
 
 68
 Plaintiffs argue that the district court erred in dismissing their breach of contract claims premised on section 301 of the LMRA, 29 U.S.C. Sec. 185,[6] for lack of jurisdiction. Plaintiffs allege that defendants breached the union bylaws and constitution by failing to submit the determination of CHOP's elimination to the membership for a referendum. Plaintiffs argue that the union's constitution constitutes a binding contract to which plaintiffs are third-party beneficiaries. Defendants' breach thus intentionally interfered with plaintiffs' contractual rights. Plaintiffs also contend that the District Council is governed by its bylaws, which in turn constitute a binding contract to which plaintiffs and other rank and file members are third party beneficiaries. Thus, the breach of the union constitution by defendants constituted intentional interference with plaintiffs' contractual rights.
 
 
 69
 According to plaintiffs, the district court erred in concluding that a union member may not sue his or her union under Sec. 185 for breaches of union bylaws or constitution. The district court erred in dismissing their contract claims, plaintiffs argue, because of its misplaced reliance on Trail v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 542 F.2d 961 (6th Cir.1976). Plaintiffs submit that Trail's premise has been seriously undermined by the Supreme Court's holding in United Ass'n of Journeymen and Apprentices of the Plumbing & Pipefitting Indus. of the United States and Canada, AFL-CIO v. Local 334, United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus. of the United States and Canada, 452 U.S. 615, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981).
 
 
 70
 We reject plaintiffs' contention that Trail is invalid because Journeymen holds that a union constitution is a contract between labor organizations, or, between labor organizations and employers, within the meaning of 29 U.S.C. Sec. 185, and because individual union members have long been permitted to enforce their contractual rights under Sec. 185 as determined by Smith v. Evening News Ass'n, 371 U.S. 195, 83 S.Ct. 267, 9 L.Ed.2d 246 (1962). Journeymen explicitly chose not to decide whether an individual union member may bring suit against his or her union for violation of the union constitution. Journeymen, 452 U.S. at 627 n. 16, 101 S.Ct. at 2553 n. 16. We decline to adopt plaintiffs' view that Smith and Journeymen permit suits such as theirs to be brought within the ambit of Sec. 185.
 
 
 71
 Despite the split among circuits with respect to the viability of Sec. 185 claims by individual union members who claim that their union has violated the union constitution, such a split is not a sufficient basis for holding Trail inapplicable to the instant case.
 
 
 72
 The district court properly dismissed plaintiffs' Sec. 185 claim stating:
 
 
 73
 Section provides jurisdiction only for "suits for violation of contracts between an employer and a labor organization ... or between any such labor organizations...." 29 U.S.C. Sec. 185(a). Although it is clear that federal courts have jurisdiction over Sec. claims arising between labor organizations, there is a conflict in the circuits as to whether Sec. permits suits by union members against the union. The law in the Sixth Circuit, however, is clear and precludes Sec. suits asserted by union members against unions on the basis of breach of the union constitution.... Thus, the Court has no jurisdiction over claims asserted by the plaintiffs under Sec. alleging breach of the constitution.
 
 
 74
 Joint Appendix at 73 (Memorandum Opinion, February 25, 1988).
 
 
 75
 Trail addressed the issue of whether contractual rights derived from union constitutions and charters can be enforced under Sec. 185 by individual union members for breach of contract as third party beneficiaries. The decision in Trail to deny such a claim was based in part on the reluctance of Congress and the courts to authorize judicial intervention in the internal affairs of unions, and in part on the existence of other specific and complete remedies provided by Congress and the courts for plaintiffs' cause of action in that case. Trail, 542 F.2d at 968. Trail specifically declined to decide the issue of whether union members may bring third party beneficiary suits against unions based on union constitutions and charters pursuant to Sec. 301 of LMRA, 29 U.S.C. Sec. 185. Id.
 
 
 76
 We recently stated that "Trail remains the law of this circuit." Tucker v. Bieber, 900 F.2d 973, 980 (6th Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 135, 112 L.Ed.2d 102 (1990). In Tucker we upheld the district court's decision not to confer jurisdiction for an individual union member's action to enforce a union constitution on the claim that the union constitution incorporated the right to retain an appointed staff job while running for office. Id. Here, we again reaffirm the continuing validity of Trail in this Circuit. Thus, the district court did not err in dismissing plaintiffs' violation of contract claims brought under 29 U.S.C. Sec. 185, for lack of subject matter jurisdiction.
 
 IV.
 
 77
 For the foregoing reasons, we AFFIRM the judgment of the Honorable Alvin I. Krenzler, United States District Judge for the Northern District of Ohio.
 
 
 
 [1]
 The International is the union with which the State and District Councils are affiliated
 
 
 [2]
 The District Council derives its membership from the local unions within its geographic region. Each local within the district elects district delegates to the District Council. The district delegates, in turn, elect the officers and trustees of each District Council. Similarly, the State Council is comprised of those District Councils within the state which have affiliated with the State Council. The State Council is supported, in part, by payments received from its constituent members
 
 
 [3]
 Sections 101(a)(1) and (2), 29 U.S.C. Sec. 411(a)(1), (2), provide as follows:
 (a)(1) Equal rights. Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.
 (2) Freedom of speech and assembly. Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
 Id. (emphasis added).
 
 
 [4]
 Plaintiffs have not stated any facts or proffered any additional arguments which invoke Sec. 411(a)(2) on its face. This case does not present the circumstance where plaintiffs' rights of free speech and assembly were violated. Presumably, plaintiffs invoke Sec. 411(a)(2) because no meeting was held where these rights might have been exercised, or given the opportunity to be exercised, in the course of discontinuing CHOP
 
 
 [5]
 Section 501 of the Act, 29 U.S.C. Sec. 501, provides, in pertinent part:
 (a) Duties of officers; exculpatory provisions and resolutions void
 The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organizations and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.
 
 
 [6]
 Section 301 of the Act, 29 U.S.C. Sec. 185, provides in pertinent part:
 (a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.