File Name: 06a0749n.06
Filed: October 11, 2006

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

Nos. 05-3146 & 3822

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

ALAN RICHARDS, et al., and WILLIAM
HAYWARD, et al.,

      Plaintiffs-Appellants,

v.

OHIO CIVIL SERVICE EMPLOYEES
ASSOCIATION, American Federation of State,
County and Municipal Employees, Local No. 11,
AFL-CIO

      Defendant-Appellee.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

_____/

Before:     MARTIN and DAUGHTREY, Circuit Judges; REEVES, District Judge.[*]

     BOYCE F. MARTIN, JR., Circuit Judge. Alan Richards, William Hayward, and other

members of the Ohio Civil Service Employees Association union appeal the district court's dismissal

of their claims against the union under the Labor Management Reporting and Disclosure Act

("LMRDA") and Labor Management Relations Act ("LMRA"). Appellants also appeal the district

court's grant of summary judgment on one of their LMRDA "informed vote" claims, and the district

_____

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky,
sitting by designation.

court's denial of their Rule 60 motion to correct one of the district court's judgments. For the following reasons, we affirm the district court's decisions.

I

Appellants are all employees of the State of Ohio and members of the Ohio Civil Service Employees Association ("OCSEA"). OCSEA is affiliated with the American Federation of State, County and Municipal Employees, Local Union No. 11, AFL-CIO ("AFSCME"). OCSEA is comprised of both public and private employees and does not contest that it is therefore a "mixed" union.

According to the terms of the affiliation agreement between OCSEA and AFSCME, all members of OCSEA are guaranteed the membership rights afforded in both the OCSEA and AFSCME constitutions. The OCSEA constitution grants all members the right to ratify collective bargaining agreements, and guarantees that "[p]rior to ratification, all new contract language negotiated by this Union will be presented in draft form to all affected members." The AFSCME constitution grants all members "an equal right to vote," as well as the "right to full participation, through discussion and vote," in the decision-making processes of the union, including acceptance or rejection of "collective bargaining contracts, memoranda of understanding, or any other agreements affecting their wages, hours, or other terms and conditions of employment."

Between 1997 and 2006, OCSEA and the State of Ohio entered into a series of three-year collective bargaining agreements. The two parties agreed to insert the following language, designated as article 43.03, into their 1997-2000 agreement:

> The Employer and the Union have the power and authority to enter into amendments of this Agreement during its term constituting an addition, deletion, substitution, or modification of this Agreement. An amendment providing for an addition, deletion, substitution or modification of this Agreement must be in writing and executed by the Executive Director of the Union and the Director of the Department of Administrative Services or designee. Upon its execution, such amendment shall supercede any existing provision of this Agreement in accordance with its terms and shall continue in full force for the duration of this Agreement. . . . *Memoranda of Understanding, amendments and any other mutually agreed to provisions, during the term of this Agreement, become effective upon the execution of the Deputy Director of the Office of Collective Bargaining and the President of the Union.* (Emphasis added).

Appellants allege that the OCSEA leadership interpreted section 43.03 to authorize, without prior membership ratification, Memoranda of Understanding ("MOUs") and other mid-term agreements that significantly modified Appellants' terms and conditions of employment, in direct violation of the full-participation-in-MOUs provision of the AFSCME constitution.

On April 18, 1998, in response to protests against the signing of MOUs and other agreements without prior membership ratification, OCSEA adopted Board Policy 46, which stated: "Ratification by the affected bargaining unit membership will only be required when agreements are entered into by OCSEA that modify the collective bargaining agreement." According to Appellants, this provision implied that the OCSEA Executive Board considered itself authorized to execute some mid-term agreements affecting the terms and conditions of employment without prior membership ratification.

On December 24, 1998, one of the several plaintiffs in this case filed an internal appeal with AFSCME protesting the OCSEA Board's use of unratified MOUs and mid-term agreements. The AFSCME Hearing Officer found that OCSEA had not violated the AFSCME constitution. This

decision was appealed to AFSCME's full judicial panel, and the full panel affirmed. The panel determined that only when an agreement has a "substantial effect" on OCSEA members' wages, hours, or other terms and conditions of employment do the affected members have a right to vote on its ratification. The panel concluded that in this case, none of the agreements rose to the level of "substantial effect," and thus none required ratification.

In 1999, OCSEA and the State of Ohio negotiated their 2000-2003 collective bargaining agreement, including a proposed change to article 43.03. The State sought to modify article 43.03 to preclude OCSEA from seeking ratification by its membership of *any* mid-term agreement reached by the parties. OCSEA objected, seeking to retain internal control over whether and how to ratify mid-term agreements. As required by Ohio law, then, the parties submitted their dueling positions to a fact finder. On February 17, 2000, the fact finder recommended that "MOUs entered into during the life of the Agreement must be ratified or rejected within 60 days, or be deemed ratified." Appellants contend that they did not interpret the 1997 version of article 43.03 as a waiver of their ratification rights. Therefore they viewed the 2000-2003 proposal — given the recommendations of the fact finder — as an affirmation of their constitutional ratification rights regarding MOUs.

In March 2000, the OCSEA membership ratified the 2000-2003 collective bargaining agreement. Subsequently, OCSEA distributed to its members printed "contract books" containing the 2000-2003 agreement. In the contract books, article 43.03 contained the following additional clause: "In the event such Memoranda of Understanding, amendments, or any other mutually agreed to provision *require* ratification by the union's membership, such ratification shall be made within sixty (60) days or such agreements shall be deemed ratified" (emphasis added).

In October 2000, Alan Richards and six other union members sued OCSEA, seeking injunctive relief to bar the union from entering into any unratified MOUs on grounds that such action violated Section 101(a)(1) of the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 411(a)(1), and the Labor Management Relations Act, 29 U.S.C. § 141 *et seq*. Specifically, Richards alleged that OCSEA had violated LMRDA § 101(a)(1) by depriving its members of their equal right to vote on certain MOUs, and by failing to provide its members with sufficient information and notice of the union's interpretation of article 43.03 to allow for an informed vote on the 1997-2000 and 2000-2003 collective bargaining agreements. Richards also alleged that by these same acts OCSEA breached both the OCSEA and AFSCME constitutions in violation of LMRA § 301, and breached its duty of fair representation in violation of § 9 of the National Labor Relations Act, 29 U.S.C. § 159, which is part of the LMRA.

The district court dismissed Richards's LMRDA § 101(a)(1) equal voting rights claim for failure to state a claim. The court dismissed Richards's other claims under the LMRA for lack of subject matter jurisdiction, finding that the LMRA does not allow a claim by public employees against a "mixed" labor organization. The court subsequently denied a motion for reconsideration of these dismissals. Richards's LMRDA § 101(a)(1) "informed vote" claim survived OCSEA's initial motion to dismiss, but OCSEA then moved for summary judgment on grounds that this claim was moot in light of Appellants having recently ratified the 2003-2006 collective bargaining agreement containing the same, "modified" article 43.03. In an order dated July 30, 2004, the district court granted the union's motion for summary judgment. Richards then filed a Rule 60 motion to

correct the July 30 judgment. This too was denied, on grounds that the court's reasoning for dismissal of Richards's various claims had been adequately laid out in its prior orders.

In March 2004, William Hayward — who, incidentally, was also a plaintiff in the still-progressing Richards litigation — and four other members of OCSEA sued the union seeking injunctive relief and damages for violations of the LMRDA and LMRA. The Hayward allegations were similar to those made by Richards, but arose from the union leadership's alleged authorization of a different MOU than the ones at issue in the Richards litigation. The district court dismissed Hayward's claims in similar fashion to those of Richards, either for failure to state a claim (on the LMRDA equal voting claim), for lack of subject matter jurisdiction (on the LMRA claims), or on collateral estoppel grounds due to its prior decisions in the Richards litigation that the membership's ratification of the 2003-2006 CBA mooted any "informed vote" claims requesting injunctive relief. Because two of the Hayward plaintiffs sought *damages* flowing from OCSEA's failure to provide an informed vote prior to ratification of the 2000-2003 CBA, however, the claim for damages was neither mooted nor collaterally estopped by the result in Richards's case. The district court thus reached the merits of the Hayward 2000-2003 informed vote claim, but granted summary judgment to OCSEA on grounds that undisputed facts showed the 2000-2003 ratification vote to have been meaningful and informed, and hence consistent with LMRDA § 101(a)(1).

II

This Court reviews *de novo* the district court's dismissal of Appellants' claims for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269 (6th

Cir. 1990); *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 451-452 (6th Cir. 2003). When considering a 12(b)(1) motion, this Court may resolve factual disputes. *Moir*, 895 F.2d at 269. When considering a 12(b)(6) motion, however, the Court must accept as true the plaintiff's allegations. *Marks*, 342 F.3d at 452.

We also review a district court's grant of summary judgment *de novo*, and must view "the facts and any inferences that can be drawn from those facts . . . in the light most favorable to the non-moving party." *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1996)). Summary judgment is only appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (quoting Fed. R. Civ. P. 56).

The standard of review for a district court's denial under Federal Rule of Civil Procedure 60 is whether the district court abused its discretion. *Walter v. Gianetti*, 282 F.3d 434, 440 (6th Cir. 2002).

III

While we affirm the district court's well-reasoned decisions on all counts — noting that there were six separate orders rendered by the district court in these complex proceedings, issued over the course of more than three years — we will briefly address each of Appellants' contentions on appeal.

First, Appellants contest the district court's dismissal of their LMRDA § 101(a)(1) equal voting rights claim pursuant to Rule 12(b)(6). The district court concluded that because section 101(a)(1) is solely an anti-discrimination provision, OCSEA's approval of the MOUs and mid-term agreements, "even if violative of [OCSEA's] constitution, was not actionable under section 101(a)(1) in the absence of any allegation that OCSEA discriminated against certain members in favor of others." D. Ct. Op., Sept. 5, 2003, at 2; Apr. 24, 2002, at 9-10. Appellants counter by arguing that selective recognition of contract ratification rights for all union members affected by some agreements and for no members affected by others, under a constitution that guarantees ratification rights on *all* agreements, is "discrimination." In other words, they argue, unions should not be free to pick and choose which MOUs to submit to members for ratification — depending on which MOUs the union fears might (or might not) be ratified — under a constitution that grants unconditional ratification rights on all agreements.

While Appellants' argument has some merit, it does not reflect the law of this Circuit. The LMRDA § 101(a)(1) equal voting rights provision, 29 U.S.C. § 411(a)(1), provides as follows:

> Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

As the Supreme Court has noted, this statute "is no more than a command that members and classes of members shall not be discriminated against in their right to nominate and vote." *Calhoon v. Harvey*, 379 U.S. 134, 139 (1964). From this proposition flows the corollary that "[w]here there is

no discrimination between members of a union there is no denial of the equal right to vote." *Corea v. Welo*, 937 F.2d 1132, 1141 (6th Cir. 1991). This Court further pointed out that "the issue under § 411(a)(1) is not whether members were treated properly or fairly, but whether they were treated equally." *Id.* In other words, whether or not the insertion of article 43.03 – which Appellants argue constituted a waiver of their rights to ratify MOUs – violated the OCSEA or AFSCME constitutions is irrelevant to the § 411(a)(1) claim in this case. As this Court has expressly stated, "[s]ection 411(a)(1) was not designed to grant federal courts jurisdiction to enforce union constitutions and by-laws across the board." *Nienaber v. Ohio Valley Carpenters Dist. Council*, 652 F.2d 1284, 1286 (6th Cir. 1981) (internal quotations omitted). Appellants are correct that this Court has also indicated that an absence of a vote *may* be grounds for a claim of the denial of the equal right to vote, *Corea*, 937 F.2d at 1142, but this does not mean that it *must* be. In order to surmount the 12(b)(6) hurdle, the claim must still allege discrimination linked to the absence of a vote, and Appellants simply have not alleged a colorable claim of discrimination in this case. *Cf. Trail v. Int'l Bhd. of Teamsters*, 542 F.2d 961, 966 (6th Cir. 1976) (concluding that the factual record was not complete enough to rule out the possibility of discrimination).

And while this result flows from our Circuit's own precedent, neither are we out of step with other circuits in reaching this conclusion. *See, e.g.*, LABOR UNION LAW AND REGULATION 34-35 (William W. Osborne, Jr., ed., 2003) (noting that the "majority of the appellate courts require *discriminatory* union action and reject the notion that a denial of a right or benefit to *all* members constitutes a basis for finding a [LMRDA] Section 101(a)(1) violation") (emphasis in original). Where federal courts have been sympathetic to the argument that section 411(a)(1) covers an equal-

denial-to-all claim, it has typically been in the context of votes of greater import than the MOUs at issue in the instant case. *See, e.g., Christopher v. Safeway Stores, Inc.*, 644 F.2d 467, 470 (5th Cir. 1981) (holding that § 411(a)(1) protects the rights of members to vote on *collective bargaining agreements* when the constitution, bylaws or articles of a union so provide).

Thus, we have no quarrel with the district court's 12(b)(6) dismissal of Appellants' LMRDA § 101(a)(1) equal voting rights claim.

IV

Appellant Hayward also presented an "informed vote" claim for damages stemming from the 2000-2003 CBA under LMRDA § 101(a)(1). This claim was outlined by the district court in its June 15, 2005 order:

> The crux of Plaintiff's claim is that OCSEA inserted substantive language into Article 43.03 after the 2000-2003 CBA vote, and that the new language was inconsistent with the Fact Finder's report [recommending that MOUs entered into during the life of the Agreement must be ratified or rejected within 60 days]. They argue that OCSEA effectively codified Board Policy 46 by sneaking it into the final language, and that the membership never actually voted for such language or for such a policy. Plaintiffs contend that [OCSEA] failed to give members fair notice that the proposal contains a controversial subject or would deprive members of a valuable membership right.

The district court noted correctly that a federal court "is not unfettered in its determination of what constitutes 'full and active participation' or a 'meaningful vote'" when reviewing a union's voting affairs. *Blanchard v. Johnson*, 532 F.2d 1074, 1078 (6th Cir. 1976). The district court nevertheless conducted a thorough analysis of the facts leading up to the vote on the 2000-2003 CBA, concluding that the 2000 vote was informed because union members had several years to discuss and raise

opposition to the ratification issue — after all, article 43.03 and Board Policy 46 were arguably in tension with each other well before the 2000 vote — and because OCSEA distributed a fair statement about its position several weeks before the CBA vote. We see no reason to revisit the district court's thorough analysis on this issue. *See* D. Ct. Op., June 15, 2005, at 11-18.

V

Given that LMRDA § 101(a)(1) provides no avenue for relief, Appellants next argue that their breach of contract and duty of fair representation claims — both stemming from the premise that OCSEA's denial of voting rights to all union members on certain MOUs breached the express terms of the AFSCME constitution, as incorporated by the OCSEA constitution — should be cognizable under LMRA § 301. The district court dismissed these claims for lack of subject matter jurisdiction, because all of the plaintiffs/appellants are employees of the State of Ohio, and the LMRA expressly excludes public employers — and by association, public employees — from its coverage. 29 U.S.C. § 152(2), (3). *See also Moir v. Greater Cleveland Regional Transit Auth.*, 895 F.2d 266, 269-72 (6th Cir. 1990). Appellants do not contest that they are public employees, or that their employer is the State of Ohio. Appellants assert, however, that it is not the employer's status that is controlling in the LMRA analysis, but rather the "union-member relationship" which, in this case, is that of "mixed union" to "public employee." Since there is a mixed union exception under the LMRDA, Appellants argue, then so too should there be a mixed union exception under the LMRA. This argument is without merit. While the mixed union exception flows logically from the underpinnings of the LMRDA, which specifically regulates union/member relationships and had as its main goal to ensure "that unions [are] democratically governed and responsive to the will of their

memberships," *Reed v. United Transportation Union*, 488 U.S. 319, 325 (1989), the same exception has no application to the prior-enacted LMRA, whose emphasis is the union's relationship with its employer, not its individual members. *See also Cunningham v. Operating Eng'rs Local* 30, 234 F. Supp. 2d 383, 395 (S.D.N.Y. 2002) (holding that the LMRA does not cover public employee claims even though the employees' local union represents both public and private employees).

VI

Appellants' final claim rests on Federal Rules of Civil Procedure 60(a) and 60(b). Appellants filed a Rule 60(a) motion seeking to correct the district court's July 30, 2004 judgment to show unambiguously that the claims the court dismissed for lack of subject matter jurisdiction were done so without prejudice. Rule 60(a) states: "Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time." The basic purpose of this rule "is to authorize the court to correct errors that are mechanical in nature and that arise from oversight or omission." *In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002). A court acts properly under Rule 60(a) when it "is necessary to 'correct mistakes or oversights that cause the judgment to fail to reflect what was intended at the time of trial.'" *Id.* at 441 (quoting *Vaughter v. Eastern Air Lines, Inc.*, 817 F.2d 685, 689 (11th Cir. 1987)). Appellants alternatively contend that the district court abused its discretion in denying them relief pursuant to Rule 60(b). Rule 60(b) allows the court to relieve a party from a final judgment for a variety of reasons, including mistake, newly discovered evidence, or "any other reason justifying relief from the operation of the judgment."

A district court abuses its discretion under Rule 60(a) if it fails to correct a judgment that is "at odds with what the court intended to accomplish." *Walter*, 282 F.3d at 441. The district court's July 30, 2004 judgment entry in the Richards litigation stated: "The court, having granted Defendant's Motion for Summary Judgment in a separate order of this same date, now enters judgment for the Defendant and against the Plaintiffs." In subsequent review of its judgment entry, the court found that:

> Since both parties, and this court, agree that the July 30, 2004 Order, had no substantive effect on the April 2002 dismissal of Counts II and III for lack of subject matter jurisdiction, the court sees no need to clarify that these dismissals were without prejudice. Further, since both parties, and this court, agree that the dismissal of Plaintiff's informed voting rights claim under Count I was for lack of subject matter jurisdiction [on the grounds that the claim was moot], the court also sees no need to clarify that this dismissal was without prejudice.

D. Ct. Op., Jan. 7, 2005, at 3. We agree, and therefore hold that the district court did not abuse its discretion in denying Appellants' relief under either Rule 60(a) or 60(b), as no further clarification was required as to which counts were dismissed without prejudice for lack of subject matter jurisdiction. The July 30, 2004 judgment finding "for the Defendant and against the Plaintiffs" was perhaps somewhat vague, but it appropriately referenced an accompanying order clearly stating the disposition of the claims. Additionally, the district court noted that the parties in the Hayward litigation had already taken positions consistent with the substantive orders dismissing the claims in the Richards litigation.

## VII

Based on the discussion above, we affirm the decisions of the district court.